OPINION
{¶ 1} Appellant, Alfie T. Sloane, appeals his conviction on six counts of rape, in violation of R.C. 2907.02(A)(1)(b)(B), a felony of the first degree, one count of attempted rape, in violation of R.C. 2907.02(A)(1)(b)(B), a felony of the first degree, two counts of complicity to commit rape, in violation of R.C. 2907.02(A)(1)(b)(B), a felony of the first degree, and seven counts of gross sexual imposition, in violation of R.C. 2907.05(A)(4)(B), a felony of the third degree.
 {¶ 2} His victims were his stepdaughter, T.W., who was between the ages of eight and nine at all times relevant to the superseding indictment, and three of her friends who regularly spent the night at Appellant's home: T.P., who was between the ages of six and seven at all times relevant to the superseding indictment, (Trial Tr., p. 18), A.S., who was between the ages of eight and nine at all times relevant to the superseding indictment, and A.S.'s sister, B.G., who was between the ages of four and five at all times relevant to the superseding indictment. Appellant received a mandatory sentence of life imprisonment based upon the jury's additional findings that he used force or the threat of force in committing the rape crimes.
 {¶ 3} In addition to the rape and gross sexual imposition charges, Appellant was also charged with four counts of disseminating matter harmful to juveniles in violation of R.C. 2907.31(A)(D), a felony of the fourth degree. The original indictment charged Appellant with, "having custody, control, or supervision of a commercial establishment," and, "displaying] at the establishment material that is harmful to juveniles and that is open to view by juveniles as part of the invited general public." (4/25/02 Indictment, Counts One through Four.) Although the first four counts of the *Page 2 
original indictment purported to assert violations of R.C. 2907.31(A)(D) (disseminating material harmful to juveniles), they actually alleged violations of R.C. 2907.311 (displaying material harmful to juveniles).
 {¶ 4} After Appellant executed a valid waiver of his speedy trial rights, the state filed a superseding indictment charging him with the same crimes, except that the displaying material harmful to juveniles charges were replaced with disseminating material harmful to juveniles charges. Counts One though Four of the superseding indictment charged that Appellant did, "directly sell, deliver, furnish, disseminate, provide, exhibit, rent or present to a juvenile * * * any material or performance that is obscene or harmful to juveniles." (4/6/06 Superseding Indictment, Counts One through Four.)
 {¶ 5} The superseding indictment also added language to the rape and gross sexual imposition charges. The original indictment failed to specifically charge that Appellant was not the spouse of his victims, which is an essential element of those crimes. In addition to the required statutory language, the superseding indictment also added a list of aliases used by Appellant, and indicated that each of the victims was under ten years of age when the crimes were committed.
 {¶ 6} Appellant filed a motion to dismiss the superseding indictment, arguing that the original indictment was defective, and as a consequence, void. Appellant reasoned that the waiver of his speedy trial rights was likewise a nullity and should not apply to the superseding indictment. Appellant further argued that the charges in the superseding indictment were distinct from the charges in the original indictment, *Page 3 
and, therefore, the speedy trial waiver should not apply to the superseding indictment.
 {¶ 7} Relying on our decision in State v. Clark, 7th Dist. No. 04MA246, 2006-Ohio-1155, the trial court dismissed the disseminating matters harmful to juveniles charges, but denied the motion with respect to the rape and gross sexual imposition charges. In Clark, we held that a defendant's speedy trial waiver applies to a superseding indictment where the superseding indictment does not change the charged offenses or add any additional charges. Id. at ¶ 18.
 {¶ 8} In his first assignment of error, Appellant challenges the trial court's denial of his motion to dismiss the rape and gross sexual imposition charges. Appellant contends that the original indictment actually charged him with importuning, not rape, and, therefore, the rape charges in the superseding indictment are distinct charges to which his speedy trial waiver should not apply.
 {¶ 9} In his second and third assignments of error, Appellant argues that there was insufficient evidence to establish that he purposely compelled A.S. to submit to rape through force or threat of force. Therefore, he should not have been subject to the sentencing enhancement in R.C. 2907.02(B). Appellant further argues that there was insufficient evidence to establish that he engaged in sexual conduct with B.G., or, in the alternative, that he did not purposely compel B.G. to submit to rape through force or threat of force. Appellant's counsel conceded at oral argument that his sufficiency of the evidence claims lacked merit. *Page 4 
 {¶ 10} Finally, in his second and third supplemental assignments of error, Appellant asserts that even if there was sufficient evidence on the foregoing charges to support his convictions, the manifest weight of the evidence favored acquittal. For the following reasons, we affirm the decision of the trial court.
 PROCEDURAL HISTORY {¶ 11} Appellant's counsel, both in his brief and in his oral argument, underscored the fact that four years passed between the original indictment and the jury trial in this case. A brief review of the procedural history of this case is informative. The original indictment in this case was filed on April 25, 2002. On June 5, 2002, Appellant filed the first of his four motions to evaluate his competency to stand trial. The trial court granted the motion, and, following a hearing conducted on October 7, 2002, the trial court concluded that Appellant was not competent to stand trial. As a consequence, Appellant was transferred to Northcoast Behavioral Healthcare System for treatment.
 {¶ 12} Appellant filed a motion for a second evaluation on March 10, 2003, indicating in the motion that a physician at Northcoast had informed the trial court by letter the previous month that Appellant was competent to stand trial. At a hearing conducted on March 19, 2003, the parties stipulated to the physician's report referred to in the motion, and the trial court concluded that Appellant was competent to stand trial. (3/19/03 J.E., p. 1.) In the judgment entry memorializing the competency hearing, Appellant was granted leave to amend his plea to not guilty and not guilty by reason of insanity, and a sanity evaluation was ordered by the trial court. *Page 5 
 {¶ 13} After amending his plea, on October 22, 2003, Appellant filed another motion to reevaluate his competency. The trial court granted the motion and ordered a third competency evaluation and a sanity evaluation. On January 5, 2004, the trial court concluded for a second time that Appellant was competent to stand trial based upon the stipulation of the parties. On that same date, Appellant withdrew his not guilty by reason of insanity plea, and the trial court accepted Appellant's guilty plea on the six rape charges.
 {¶ 14} On March 12, 2004, Appellant filed a motion to withdraw his guilty plea, and his trial counsel filed a motion to withdraw. Appellant requested his fourth and final competency evaluation on June 1, 2004. The trial court granted his motion and, at a hearing concluded on July 27, 2004, the parties stipulated to Appellant's competency to stand trial. On August 10, 2004, another attorney was appointed to replace Appellant's original trial counsel.
 {¶ 15} On November 23, 2004, the trial court permitted Appellant to withdraw his guilty plea, and he entered a valid waiver of his speedy trial rights. On that same date, a pre-trial conference was scheduled for December 22, 2004. On February 11, 2005, after the pretrial conference had been continued twice at Appellant's request, the trial court scheduled the trial for June 8, 2005.
 {¶ 16} Over the course of the next ten months, the trial was continued three times, twice based upon joint requests of the parties (to October 3, 2005 and December 5, 2005), and once upon a motion to continue filed by Appellant (to April 3, 2006). *Page 6 
 {¶ 17} On April 3, 2006, the trial court granted Appellant's motion to discharge the jury and rescheduled the trial for June 12, 2006. The judgment entry, dated April 5, 2006, memorializes the foregoing events but provides no explanation for their occurrence. (4/5/06 J.E., p. 1.) The judgment entry reads, "[s]ee record," but Appellant did not include a transcript of the proceedings with the record on appeal.
 {¶ 18} On April 6, 2006, the state filed the superseding indictment. Two months later, on June 6, 2006, Appellant filed his motion to dismiss the superseding indictment. On June 14, 2006, the trial court granted the state's unopposed motion to continue the trial to August 7, 2006. Prior to empanelling a jury on August 7, 2006, the trial court stated on the record that it was denying the motion to dismiss on the rape and gross sexual imposition charges pursuant to our holding inClark, supra.
 {¶ 19} The charges at issue in this appeal allege crimes committed between January 1, 2000, and December 31, 2000. As a consequence, the following version of R.C. 2907.02 governs this case:
 {¶ 20} "2907.02 RAPE; EVIDENCE; MARRIAGE OR COHABITATION NOT DEFENSES TO RAPE CHARGES
 {¶ 21} "(A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:
 {¶ 22} "* * *
 {¶ 23} "(b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person. *Page 7 
 {¶ 24} "* * *
 {¶ 25} "(B) Whoever violates this section is guilty of rape, a felony of the first degree. * * * If the offender under division (A)(1)(b) of this section purposely compels the victim to submit by force or threat of force, whoever violates division (A)(1)(b) of this section shall be imprisoned for life."
 {¶ 26} The trial court appears to have applied a later version of R.C. 2907.02, which took effect on June 13, 2002, that predicated life imprisonment for rape in violation of R.C. 2907.02(A)(1)(b) on a finding that the defendant used force or the threat of force in committing the rape, or that the victim was under the age of ten. The verdict forms included two "additional findings" forms for each count of rape, one verdict form for the jury to find whether Appellant purposely compelled his victim to submit by force or threat of force, and a second verdict form for the jury to find whether his victim was under the age of ten when the crime was committed.
 ASSIGNMENT OF ERROR I {¶ 27} "THE TRIAL COURT DEPRIVED APPELLANT SLOANE OF HIS CONSTITUTION [sic] RIGHT TO A SPEEDY TRIAL, UNDER THE SIXTH AMENDMENT, AND HIS STATUTORY RIGHT TO A SPEEDY TRIAL, UNDER R.C. § 2945.71 ET SEQ. (App. at 13), WHEN IT ALLOWED THE STATE TO PROSECUTE HIM ON A SUPERSEDING INDICTMENT, THAT AROSE FROM THE SAME FACTS AND EVIDENCE AS THE ORIGINAL INDICTMENT FOUR YEARS AFTER THE DATE OF HIS ARREST. (ORDER AUGUST 15, 2006)." *Page 8 
 {¶ 28} The right to a speedy trial is a constitutional right of every defendant who is charged with an offense for which he may be deprived of his liberty or property. Sixth Amendment, Constitution of the United States; Article I, Section 10, Constitution of Ohio. Like other fundamental rights, the right to a speedy trial can be waived by a defendant. The waiver of a constitutional right implicates due process concerns, and, therefore, such a waiver must be done knowingly, voluntarily, and intelligently. State v. Adams (1989), 43 Ohio St.3d 67,69, 538 N.E.2d 1025.
 {¶ 29} Appellant's argument in his first assignment of error turns on the failure of the original indictment to include statutory language that states that the victims of the rape and gross sexual imposition charges in this case were "not the spouse of the offender." Appellant argues that, because the original indictment omitted the required statutory language, he was actually charged with importuning, in violation of R.C. 2907.07, in the original indictment. CitingAdams, supra, Appellant contends that the rape charges in the superseding indictment are different from the importuning charges in the original indictment and subject to different defenses at trial, and, therefore, his speedy trial waiver should not apply to the rape charges.
 {¶ 30} In Adams, the defendant was charged with a violation of R.C. 4511.19(A)(3) in the original indictment, then charged with a violation of R.C. 4511.19(A)(1) in the superseding indictment. The Adams Court acknowledged that, "[w]hen an accused waives the right to a speedy trial as to an initial charge, this waiver is not applicable toadditional charges arising from the same set of *Page 9 
circumstances that are brought subsequent to the execution of the waiver." Id. at syllabus, 538 N.E.2d 1025 (Emphasis added).
 {¶ 31} The state argued that the charges in the original indictment and the superseding indictment were substantially similar, in that they were derived from the same statute and generally involved the same conduct. However, Adams successfully argued that his waiver, as applied to the subsequent charges, was not knowingly, voluntarily and intelligently made because the subsequent charges were "distinct" from the original charges and could have, "involve[d] different defenses at the time of trial." Id. at 69, 538 N.E.2d 1025. The Ohio Supreme Court held that the application of Adams' waiver to the charges in the superseding indictment violated his due process rights because he did not know, "the exact nature of the crime he [was] charged with," when he executed the waiver. Id. at 70, 538 N.E.2d 1025.
 {¶ 32} We undertook an analysis of the rule announced in Adams inClark, supra. In that case, the original indictment charged Clark with rape and gross sexual imposition, but did not include the statutory language that he purposely compelled his victim to submit by force or threat of force. Id. at ¶ 8. Although the original indictment omitted the statutory language, the indictment twice stated that Clark was facing life imprisonment as a penalty for the crimes charged. Clark waived his speedy trial rights, then, approximately one year later, the state filed a superseding indictment that included the missing statutory language.
 {¶ 33} Citing Adams, supra, Clark argued that the new language changed the potential punishment that he faced. Id. at ¶ 16. However, we concluded that Clark *Page 10 
was on notice of the charges against him when he waived his speedy trial rights, because the original indictment identified the statutory subsection under which he was charged, and twice stated that the offense was punishable by life imprisonment.
 {¶ 34} At oral argument in the case sub judice, Appellant's counsel asserted that the original indictment in this case was distinguishable from the original indictment in Clark, because the original indictment in this case was defective. In other words, the original indictment inClark could have survived a motion to dismiss, because the missing language in that case involved a sentencing enhancement rather than an essential element of the crime. To the extent that the original indictment in the case sub judice was void, so too, Appellant argues, was his speedy trial waiver based on that indictment.
 {¶ 35} Appellant premises his argument on a Supreme Court of Ohio case that stands for the rule that, "[a] judgment of conviction based on an indictment which does not charge an offense is void for lack of jurisdiction of the subject matter and may be successfully attacked * * * on direct appeal to a reviewing court * * *." State v. Cimpritz
(1953),158 Ohio St. 490, 110 N.E.2d 416, paragraph six of the syllabus. In Cimpritz, the Supreme Court of Ohio affirmed a decision reversing an attempted burglary conviction, because the indictment did not state that Cimpritz acted "maliciously and forcibly" when he attempted to break and enter. Because intent was an essential element of the crime of attempted burglary, the Supreme Court concluded that the indictment was void. *Page 11 
 {¶ 36} The Cimpritz Court further reasoned that the indictment was not subject to the curative provisions of Sections 13437-28 and 13437-29 of the General Code (now Sections 2941.29 and 2941.30), which authorize correction in the form or substance of an indictment. The Court wrote, in dicta, that those provisions apply only to an indictment that charges an offense, "but they do not contemplate the making of a good indictment out of one which states no offense. There must be something effectual on which [those sections] can operate to make them available." Id., syllabus at paragraph four.
 {¶ 37} Eight years later in State v. Wozniak (1961), 172 Ohio St. 517,178 N.E.2d 800, the Supreme Court of Ohio affirmed an appellate court decision reversing an attempted burglary conviction because the trial court had permitted the state to amend the indictment to include the essential element of intent. Contrary to its earlier holding inCimpritz, the Wozniak Court conceded that the curative statutory provisions cited in that case, standing alone, might have required reversal of the appellate court's decision. The Court chose instead to predicate its decision on Section 10 of Article I of the Constitution of Ohio, which provides, "no person shall be held to answer for a capital, or otherwise infamous, crime, unless on presentment or indictment of a grand jury." The Wozniak Court held that, "[i]n order to justify conviction of a defendant for such a crime, the grand jury and not the prosecutor, even with the approval of the court, must charge the defendant with each essential element of that crime." Id.,178 N.E.2d 800. *Page 12 
 {¶ 38} Turning to the case sub judice, it is important to first note that the constitutional concerns raised in Cimpritz and Wozniak are not present here. Appellant was not convicted based upon the original indictment, and it is clear that the superseding indictment included all of the essential elements of the crimes of rape and gross sexual imposition. Therefore, Appellant's reliance on Cimpritz andWozniak is misplaced.
 {¶ 39} Of equal significance, the Supreme Court of Ohio appears to have abandoned the strict rule announced in Wozniak, supra, in favor of a broader rule premised upon notice and prejudice. In State v.O'Brien (1987), 30 Ohio St.3d 122, 508 N.E.2d 144, the Court reinstated a child endangerment conviction despite the fact that the trial court had permitted the state to amend the indictment, prior to empanelling the jury, to include the essential element of recklessness. Although the appellate court concluded that the amendment allowed the jury to convict the accused on a charge essentially different from the charge for which he was indicted, the Supreme Court held that the amendment was, nonetheless, authorized by Crim. R. 7.
 {¶ 40} Crim. R. 7(D), captioned "Amendment of indictment, information, or complaint," reads, in pertinent part:
 {¶ 41} "The court may at any time before, during, or after a trial amend the indictment, information, complaint, or bill of particulars, in respect to any defect, imperfection, or omission in form or substance, or of any variance with the evidence, provided no change is made in the name or identity of the crime charged. If any *Page 13 
amendment is made to the substance of the indictment, information, or complaint, or to cure a variance between the indictment, information, or complaint and the proof, the defendant is entitled to a discharge of the jury on the defendant's motion, if a jury has been impaneled, and to a reasonable continuance, unless it clearly appears from the whole proceedings that the defendant has not been misled or prejudiced by the defect or variance in respect to which the amendment is made, or that the defendant's rights will be fully protected by proceeding with the trial, or by a postponement thereof to a later day with the same or another jury* * *."
 {¶ 42} Applying Crim. R. 7(D), the O'Brien Court administered a two-part test: First, the Court determined that the additional language charging O'Brien with recklessness did not change the name of the crime, or alter the penalty or degree of the offense. Id. at 126,508 N.E.2d 144. In other words, O'Brien knew that he was being charged with child endangerment despite the fact that the original indictment omitted the essential element of recklessness.
 {¶ 43} Second, because adding an essential element constituted an amendment to the substance of the indictment, the Court examined the procedural and substantive history of the case to determine whether O'Brien was misled or prejudiced by the amendment. The Court concluded that O'Brien had notice of both the offense and the applicable statute, and knowledge of the appropriate mental state, which was evidenced by his continuing efforts, before and during trial, to seek a dismissal of the indictment based upon the deficiency. Id. *Page 14 
 {¶ 44} O'Brien argued that the defect in the indictment could not be cured by amendment because the amendment allowed the jury to convict him on a charge different from the charge handed down from the grand jury, citing State v. Headley (1983), 6 Ohio St.3d 475, 453 N.E.2d 716. InHeadley, the accused was indicted on a drug trafficking charge, but the indictment did not identify the controlled substance involved. TheHeadley Court wrote that the essence of the constitutional guarantee articulated in Wozniak is "further manifested in Crim. R. 7(D)," which limits the court's power to amend an indictment. Id. at 479,453 N.E.2d 716. The Headley Court concluded that the indictment in that case could not be amended because the type of controlled substance involved was an essential element of the crime and the amendment, "would change the very identity of the offense charged." Id., 453 N.E.2d 716.
 {¶ 45} The O'Brien Court distinguished its prior opinion inHeadley writing, "[i]n the case before us, [the defendant] was charged with the crime of endangering children. Failure to include the element of `recklessness' in an indictment for endangering children in no way alters either the name, identity or severity of the offense charged." Id. at 127, 508 N.E.2d 144. The O'Brien Court ultimately held that, "an indictment which does not contain all the essential elements of an offense may be amended to include the omitted element, if the name or the identity of the crime is not changed, and the accused has not been misled or prejudiced by the omission of such element from the indictment." Id. at 127-128, 508 N.E.2d 144. *Page 15 
 {¶ 46} Several important inferences can be drawn fromO'Brien. First, the Supreme Court of Ohio has abandoned the rationale articulated in Cimpritz, supra, that a defective indictment is void and cannot be amended. Second, prejudice in the O'Brien context constitutes something more than a lost opportunity to seek dismissal of the charges in the original indictment. In other words, a defendant cannot argue that he has been prejudiced by an amendment simply because, prior to the amendment, he could have successfully moved for dismissal of the charges. Finally, and most significantly, the decision inO'Brien, like the decision in Clark, turns on the issue of notice to the defendant.
 {¶ 47} In the case sub judice, there is no question that Appellant had notice that he was being charged with rape and gross sexual imposition. First, the addition of the "not the spouse of the offender" language did not change the name, identity, or the penalty of the crimes charged in the original indictment, which were clearly identified as rape and gross sexual imposition. Second, although the amendment was substantive in nature, Appellant cannot demonstrate that he was misled or suffered prejudice as a result of the amendment.
 {¶ 48} The rape and gross sexual imposition charges were listed in the caption of the original indictment, and the statutory sections were clearly identified in each individual count. Moreover, a review of the procedural and substantive history of the case reveals that Appellant actually pleaded guilty to all of the rape charges (later withdrawing his plea), and specifically listed the rape and gross sexual imposition *Page 16 
charges as the charges for which he was waiving his speedy trial rights. (11/23/04 Waiver of Right to Speedy Trial, p. 1.)
 {¶ 49} Simply stated, there is absolutely no evidence that Appellant, at any point during the pendency of this action, thought he was charged with importuning, rather than rape and gross sexual imposition. As a consequence, he cannot argue that the application of his speedy trial waiver to the rape and gross sexual imposition charges in the superseding indictment violated his due process rights. Furthermore, to the extent that Appellant argues lack of notice as to the "not the spouse of the victim" element of the crimes, he cannot demonstrate prejudice because, based upon the stated ages of his victims, there is no way that Appellant could have asserted at trial that he was the spouse of any of the victims.
 {¶ 50} The Ohio Supreme Court held that the application of the speedy trial waiver to the charges in the superseding indictment inAdams, supra, violated the defendant's due process rights because he did not know, "the exact nature of the crime he [was] charged with," when he executed the waiver. Id. at 70, 538 N.E.2d 1025. Here, Appellant clearly identified the charges for which he was waiving his speedy trial rights as "rape, GSI, and attempted rape." (11/23/04 Waiver of Right to Speedy Trial, p. 1.) Therefore, he can not argue that he did not know the nature of the crimes when he executed the waiver. Accordingly, Appellant's first assignment of error is overruled.
 {¶ 51} After filing his original appellate brief, Appellant sought leave of this Court to file supplemental assignments of error. We granted Appellant's motion, but *Page 17 
instructed him to file an amended brief containing all of his assignments of error. Instead, Appellant filed a supplemental brief containing two new assignments of error. Because his supplemental assignments of error assert manifest weight of the evidence challenges to the same essential elements for which he challenges the sufficiency of the evidence in his original assignments of error, they will be addressed together for the purposes of clarity and judicial economy.
 ASSIGNMENT OF ERROR II {¶ 52} "THE STATE FAILED TO MEET ITS CONSTITUTIONAL BURDEN OF PROOF BEYOND A REASONABLE DOUBT, IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT, WHEN IT FAILED TO OFFER SUFFICIENT EVIDENCE TO SHOW THAT IS. [sic] WAS COMPELLED BY FORCE OR THE THREAT OF FORCE TO ENGAGE IN SEXUAL CONDUCT WITH APPELLANT SLOANE. (Trans. Vol. II, p. [sic] 357-358)."
 SUPPLEMENTAL ASSIGNMENT OF ERROR I {¶ 53} "APPELLANT SLOANE'S CONVICTIONS FOR RAPE WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF 3(B)(3) ARTICLE IV OHIO CONSTITUTION, THUS CREATING A MANIFEST MISCARRIAGE OF JUSTICE BECAUSE THE GREATER WEIGHT OF THE EVIDENCE SHOWED THAT IS. [sic] WAS NOT FORCED, NOR THREATENED WITH FORCE, TO ENGAGE IN SEXUAL CONDUCT."
 {¶ 54} Sufficiency is a term of art meaning that legal standard which is applied to determine whether a case may go to the jury or whether evidence is legally *Page 18 
sufficient to support the jury verdict as a matter of law. Sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law. State v. Robinson (1955),162 Ohio St. 486, 124 N.E.2d 148. A conviction based on legally insufficient evidence constitutes a denial of due process. State v. Thompkins (1997),78 Ohio St.3d 380, 386-387, 678 N.E.2d 541, citing Tibbs v. Florida
(1982), 457 U.S. 31, 102 S.Ct. 2211.
 {¶ 55} Where there is substantial evidence upon which the trier of fact has based its verdict, a reviewing court abuses its discretion in substituting its judgment for that of the jury as to the weight and sufficiency of the evidence. State v. Nicely (1988), 39 Ohio St.3d 147,529 N.E.2d 1236. The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact to determine.State v. DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212. Therefore, an appellate court must view the evidence in a light most favorable to the prosecution, and determine whether any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, 547 N.E.2d 492;Jackson v. Virginia (1979), 443 U.S. 307, 99 S.Ct. 2781.
 {¶ 56} On the other hand, Article IV, Section 3(B)(3) of the Ohio Constitution authorizes appellate courts to assess the weight of the evidence independently of the fact finder. Thus, when a claim is assigned concerning the manifest weight of the evidence, an appellate court, "has the authority and duty to weigh the evidence and to determine whether the findings of * * * the trier of the facts were so against the weight of the evidence as to require a reversal and a remanding of the case for *Page 19 
retrial." State ex rel. Squire v. City of Cleveland (1948),150 Ohio St. 303, 345, 82 N.E. 2d 709.
 {¶ 57} "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v.Martin (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717. The manifest weight of the evidence test goes to whether the evidence is persuasive or believable. State v. Thompkins (1997), 78 Ohio St.3d 380, 387,678 N.E.2d 541. "Weight is not a question of mathematics, but depends on [the evidence's] effect in inducing belief." (Emphasis in original.) Id., citing Black's Law Dictionary (6th Ed. 1990) 1594.
 {¶ 58} "[W]hen reviewing whether a verdict is against the manifest weight of the evidence, an appellate court must review the entire record, consider the credibility of the witnesses, and determine whether `the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" State v. Duque, 2005-Ohio-4187, ¶ 19, citingThompkins, supra.
 {¶ 59} "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony."Thompkins, at 387, citing Tibbs v. Florida (1982), 457 U.S. 31,102 S.Ct. 2211. *Page 20 
 {¶ 60} Courts consider eight factors in determining whether a decision is against the manifest weight of the evidence: including whether the evidence was uncontradicted; whether a witness was impeached; what was not proved; that the reviewing court is not required to accept the incredible as true; the certainty of the evidence; the reliability of the evidence; whether a witness' testimony is self-serving; and whether the evidence is vague, uncertain, conflicting, or fragmentary. State v.Apanovitch (1987), 33 Ohio St.3d 19, 23-24, 514 N.E.2d 394.
 {¶ 61} In counts fourteen and fifteen, Appellant was convicted of rape with force specifications, based upon the testimony of A.S. that he made her undress and perform oral sex on him. R.C. 2901.01(A)(1) defines "force" as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." In State v.Eskridge (1988), 38 Ohio St.3d 56, 526 N.E.2d 304, the Ohio Supreme Court held that the force and violence necessary to commit the crime of rape depends upon the age, size and strength of the parties and their relation to each other. Id. at 58. The Court acknowledged that, "R.C. 2907.02(B) requires only minimal force or threat of force be used in the commission of a rape." Id.
 {¶ 62} However, where the abuse is committed by a parent, the same degree of force and violence is not required upon a child of tender years. Id. "[F]orce need not be overt and physically brutal, but can be subtle and psychological. As long as it can be shown that the rape victim's will was overcome by fear or duress, the forcible element of rape can be established." Id. at 58-59, quoting State v. Fowler (1985),27 Ohio App.3d 149, 154, 500 N.E.2d 390, 395. *Page 21 
 {¶ 63} Approximately ten years later, the Supreme Court broadened the application of the relaxed standard announced in Eskridge to include a person in a position of authority over the child. State v. Dye (1998),82 Ohio St.3d 323, 695 N.E.2d 763, syllabus. The Dye Court premised its decision on testimony that the victim's mother instructed her son to mind the defendant and not to aggravate him, or she would come and pick him up or the defendant would bring him home. Id. at 328. The fact that the threat came from the victim's mother, rather than the defendant, did not forestall the Court from concluding that the victim relented under the threat of punishment. Id. at 328-329. The Court was also unmoved by the fact that the defendant and the victim were not related, since the victim spent at least one day a week at the defendant's house, and all of the sexual abuse occurred while the victim was visiting the defendant. Id. Finally, the Court relied on the fact that the defendant instructed the victim not to tell anyone about the sexual abuse. Id. at 328.
 {¶ 64} The element of force in subsequent appellate opinions has turned on whether the victim and the abuser had a parent-child relationship, whether the defendant moved, undressed, or held the child down during the abuse, and whether the defendant instructed the child to conceal the sexual assault. State v. Edinger, 10th Dist. No. 05AP-31,2006-Ohio-1527, ¶ 49-50. Here, Appellant relies on A.S.'s testimony that she was not afraid of him (Trial Tr., pp. 357, 393), that he had never been violent toward her (Trial Tr., p. 357), and that he did not tell her she would get in trouble if she told anyone about the sexual abuse (Trial Tr., p. 356), to demonstrate that she was not compelled to submit by force. *Page 22 
 {¶ 65} First, it is important to note that Appellant does not challenge the trial court's jury instruction regarding the application of the relaxed standard articulated in Eskridge and Dye, supra. In other words, Appellant appears to concede that he had a position of power over A.S., and argues instead that there was insufficient evidence to convict him, or that the majority of the testimony at trial supports the conclusion that A.S. was not subjected to even subtle or psychological force.
 {¶ 66} The facts in this case are markedly similar to the facts inDye, supra, in that Appellant and A.S.'s mother were friends, A.S. was a regular visitor at Appellant's residence, and Appellant was in charge of her care on her overnight visits. However, there is no evidence that A.S.'s mother ever instructed her to obey Appellant, nor was there any testimony that she threatened to punish A.S. if she did not behave while she was at Appellant's house. Furthermore, although A.S. testified that she saw Appellant hit T.W. (Trial Tr., p. 357), she conceded on cross-examination that Appellant was disciplining T.W. at the time, and the discipline was unrelated to the sexual abuse. (Trial Tr., p. 393.)
 {¶ 67} On the other hand, when A.S. was asked who would remove her clothes prior to the assaults, she responded, "I would. He would make me take off my clothes." (Trial Tr., p. 349.) Likewise, A.S. testified that Appellant would, "make [her] suck his penis," (Trial Tr., 351), and "make us jack him off." (Trial Tr., p. 366.) She further testified that, during oral sex, Appellant would "hold[] her head and mov[e] it back and forth." (Trial Tr., p. 411.) When asked if she ever thought about telling someone about the abuse, A.S. answered, "[y]es, but I thought I was going to *Page 23 
be the one that was going to get in trouble." (Trial Tr., p. 356.) Although A.S. testified that Appellant did not tell her not to divulge her own abuse, she stated that Appellant warned her not to tell anyone about what he was doing with B.G. (Trial Tr., p. 413.)
 {¶ 68} As stated earlier, force can be established under the relaxed standard where there is evidence that the rape victim's will was overcome by fear or duress. Although there is no evidence that A.S. feared Appellant, or that she was told by her mother to obey him, her choice of words demonstrates that she did feel compelled to submit to the sexual abuse. A.S. consistently stated that Appellant "made" her perform the acts for which he was convicted. Moreover, she testified that he held her head and manipulated it during oral sex. This testimony was consistent with the testimony credited in Edinger, supra, to establish the element of duress. Finally, although A.S. was not instructed to conceal her own abuse, she was told by Appellant not to tell anyone about B.G. Where there are multiple victims of sexual abuse by the same perpetrator, as in the case sub judice, a child would naturally believe that the defendant's warning about divulging the sexual abuse committed against one victim would apply with equal force to the other victims.
 {¶ 69} In order to survive a challenge based upon the manifest weight of the evidence, the state need only demonstrate that, "there is substantial evidence upon which a jury could reasonably conclude that all the elements have been proved beyond a reasonable doubt." (Emphasis omitted.) State v. Nields (2001), 93 Ohio St.3d 6, 25, 752 N.E.2d 859. The foregoing facts constitute substantial evidence that *Page 24 
Appellant employed the "minimal force" necessary to trigger the force specification set forth in R.C. 2907.02(B). See Eskridge, supra. Accordingly, Appellant's second assignment of error and first supplemental assignment of error are overruled.
 ASSIGNMENT OF ERROR III {¶ 70} "THE STATE FAILED TO MEET ITS CONSTITUTIONAL BURDEN OF PROOF BEYOND A REASONABLE DOUBT, IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT, WHEN IT FAILED TO OFFER SUFFICIENT EVIDENCE TO SHOW THAT B.G. ENGAGED IN SEXUAL CONDUCT WITH APPELLANT SLOANE. (Trans. Vol. II, p. [sic] 357-358)." SUPPLEMENTAL ASSIGNMENT OF ERROR II
 {¶ 71} "APPELLANT SLOANE'S CONVICTIONS FOR RAPE WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF SECTION 3(B)(3) ARTICLE IV OHIO CONSTITUTION, THUS CREATING A MANIFEST MISCARRIAGE OF JUSTICE BECAUSE THE GREATER WEIGHT OF THE EVIDENCE SHOWED THAT B.G. NEITHER ENGAGED IN SEXUAL CONDUCT, NOR WAS COMPELLED TO DO SO, WITH APPELLANT SLOANE."
 {¶ 72} In counts eighteen and nineteen, Appellant was convicted of complicity to commit rape with force specifications, based upon the testimony of A.S. and T.W. that he forced B.G. to have sex with T.W.'s brother, M.T. However, B.G. denied that M.T. was at Appellant's house when she was there. B.G.'s only testimony with respect to the sexual assault was that she, "used to get touched in places that [she] wasn't supposed to," by Appellant. (Trial Tr., p. 425). *Page 25 
 {¶ 73} Once again, Appellant does not challenge the fact that the trial court instructed the jury on the relaxed standard for coercion announced in Eskridge and Dye, supra. Appellant contends that B.G.'s testimony supported his conviction for sexual contact, but failed to establish sexual conduct. In the alternative, he contends that the testimony at trial fell short of establishing force.
 {¶ 74} In fact, B.G. testified that she was never penetrated by Appellant (Trial Tr., p. 440), and that she never touched or was touched by M.T. (Trial Tr., p. 437.) However, T.W. testified that Appellant forced M.T. to "have sex" with B.G. (Trial Tr., pp. 460-461, 497.) Likewise, A.S. testified that Appellant would make M.T. put his penis between B.G.'s legs. (Trial Tr., p. 359.) The testimony of T.W. and A.S. was corroborated by Dr. Wilfred Dodgson, who performed a physical examination on B.G. after the molestation charges were leveled against Appellant. He testified that B.G. had three tears in her hymen ring, which indicated partial penetration of the hymen. (Trial Tr., p. 591.) Furthermore, A.S. testified that Appellant made B.G. perform oral sex on M.T. (Trial Tr., p. 361.)
 {¶ 75} This case presents a unique circumstance, where there exist several victims who were not only abused but also witnessed the abuse of their fellow victims. Interestingly, B.G. not only testified that M.T. had never touched her, but that he was never present at the house when she was there. B.G.'s testimony that M.T. was not even in the house, which directly contradicts the testimony of her fellow victims, makes any testimony she provided about him inherently suspect. *Page 26 
 {¶ 76} On the other hand, the remainder of the testimony provided at trial about M.T. is consistent. T.W. testified that Appellant made M.T. engage in vaginal sex with B.G. A.S. testified that Appellant made M.T. put his penis between B.G.'s legs and made B.G. perform oral sex on M.T. Likewise, the uncontradicted medical testimony confirms that B.G. was a victim of sexual abuse. Accordingly, there was credible evidence to support the guilty verdict on the two counts of complicity to commit rape.
 {¶ 77} Turning to the issue of force, the Ohio Supreme Court inEskridge, supra, quoted with favor the opinion of the appellate court that, "the rape of a four-year-old is inevitably forcible, and that Eskridge's conviction under R.C. 2907.02(A)(3) [rape of a child under the age of 13] and 2907.02(B) carries with it, under these facts, an implicit finding of some degree of force." Id. at 58. However, the appellate court in Eskridge remanded the case back to the trial court for resentencing because, "[t]he transcript reveal[ed] no threats, commands, or physical contact which would permit an inference of the force or coercion envisioned by the statute." State v. Eskridge (June 18, 1987), 8th Dist. No. 52359, *3.
 {¶ 78} In reversing the appellate court decision, the Supreme Court wrote, "[w]e do not read the statute as the court of appeals applied it. R.C. 2907.02(B) requires only that minimal force or threat or force be used in the commission of a rape. As noted above, Eskridge used at least minimal force in committing the rape against the victim."Eskridge, 38 Ohio St.3d at 58, 526 N.E.2d 304. *Page 27 
 {¶ 79} The same is true in the case sub judice. While there is no evidence that Appellant threatened or commanded B.G. to perform the sexual acts with M.T., the age difference and disparity in size between Appellant and B.G. suggests the inherent force necessary to constitute minimal force under the statute. This conclusion is consistent with the Supreme Court's pronouncement that, "[a] four-year-old child cannot consent to sexual conduct." Id. As a consequence, there was credible evidence to support Appellant's conviction on the force specifications. Accordingly, Appellant's third assignment of error and second supplemental assignment of error are overruled.
 {¶ 80} In summary, the rape and gross sexual imposition charges in the superseding indictment did not change the charged offenses or add any additional charges to the original indictment. Therefore, the application of the speedy trial waiver to the superseding indictment did not violate Appellant's right to due process. Furthermore, the greater weight of the evidence established that Appellant used sufficient force with respect to both A.S. and B.G. to trigger the force specification in R.C. 2907.02(B). Likewise, the greater weight of the evidence demonstrated that Appellant was guilty of complicity to commit rape with respect to B.G.
 {¶ 81} As a consequence, all of Appellant's assignments of error are overruled and his conviction and sentence are affirmed in full.
Vukovich, P.J., concurs.
DeGenaro, J., concurs. *Page 1