[Cite as *State v. Stacey*, 2009-Ohio-3816.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## SENECA COUNTY

STATE OF OHIO,

   PLAINTIFF-APPELLEE,                    CASE NO. 13-08-44

   v.

PAUL N. STACEY,                            O P I N I O N

   DEFENDANT-APPELLANT.

---

Appeal from Seneca County Common Pleas Court
Trial Court No. 07-CR-0207

**Judgment Affirmed**

**Date of Decision:  August 3, 2009**

---

APPEARANCES:

   *Allison M. Lawrence* for Appellant

   *Rhonda L. Best* for Appellee

**WILLAMOWSKI, J.**

{¶1} The defendant-appellant, Paul N. Stacey, appeals the judgment of the Seneca County Common Pleas Court convicting him of rape and ordering him to serve a mandatory life sentence. On appeal, Stacey contends that Senate Bill 10 violates the ex post facto clause of the United States Constitution and the retroactivity clause of the Ohio Constitution; that the trial court erred by not instructing the jury on the lesser-included-offense of gross sexual imposition; that the trial court erred by allowing the state to amend the indictment; and that he had the ineffective assistance of trial counsel. For the reasons stated herein, the judgment of the trial court is affirmed.

{¶2} On September 22, 2006, at approximately 5:30 or 5:45 a.m., Joleen L. took her five-year old daughter, T.L., to the home shared by Stacey and his wife, Kim, who babysat T.L. until she left for school. When T.L. arrived at Stacey's home, he got out of bed to watch her so Kim could continue to sleep. On the couch in the living room, Stacey inserted his penis into her vagina and ejaculated. T.L. went to school that day, and when she came home, she disclosed the rape to her mother's live-in boyfriend. Late that night, T.L. was taken to a hospital in Toledo, Ohio, where a sexual assault nurse examiner completed an examination. Forensic testing indicated the presence of Stacey's DNA in T.L.'s underwear and in her vaginal opening.

{¶3} On July 31, 2007, a complaint was filed against Stacey alleging a violation of R.C. 2907.02(A)(1), (B), rape. Stacey waived a preliminary hearing, and on November 15, 2007, the Seneca County Grand Jury indicted him on one count of rape, a violation of R.C. 2907.02(A)(1)(b), (B). Also on November 15, 2007, the court granted the state's motion to amend the indictment to indicate that the offense was a first-degree felony. On November 27, 2007, Stacey entered a plea of not guilty at arraignment. During arraignment, the state made an oral motion to amend the indictment, which had formerly indicated that the victim was the spouse of the offender, to charge that the victim was not the spouse of the offender. Defense counsel did not oppose the motion, and the court allowed the amendment. A written motion was filed by the state on November 28, 2007, which the court granted on November 29, 2007.

{¶4} The case culminated in a four-day jury trial. On November 20, 2008, the jury found Stacey guilty and found that the victim had been under the age of 10 at the time of the offense. Immediately following the verdict, the court held a joint sexual offender classification hearing and sentencing hearing. The court classified Stacey as a Tier III sex offender and ordered him to serve a mandatory term of life imprisonment. Stacey appeals the judgment of the trial court, raising seven assignments of error.

*First Assignment of Error*

**The trial court's retroactive application of Senate Bill 10 in classifying Appellant as a Tier III offender violates the ex post facto clause of the United States Constitution and the retroactivity clause of Section 28, Article II of the Ohio Constitution.**

*Second Assignment of Error*

**The trial court committed plain error by failing to instruct the jury on the lesser-included offense of gross sexual imposition.**

*Third Assignment of Error*

**Insofar as the second assignment of error may have been waived by trial counsel's failure to request an instruction on the lesser-included offense of gross sexual imposition, Appellant was denied his constitutional right to effective assistance of counsel.**

*Fourth Assignment of Error*

**The trial court committed plain error when it allowed amendment of the indictment to charge an offense.**

*Fifth Assignment of Error*

**Insofar as the fourth assignment of error may have been waived by trial counsel's failure to object in the trial court to the fact that the grand jury never charged Appellant with a crime, Appellant was denied his constitutional right to effective assistance of counsel.**

*Sixth Assignment of Error*

**Trial counsel's failure to object to repeated instances of inadmissible hearsay denied Appellant his constitutional right to effective assistance of counsel.**

*Seventh Assignment of Error*

**Insofar as the court may deem the above errors non-prejudicial when taken alone, the cumulative effect of the errors at trial deprived Appellant of his constitutional right to a fair trial.**

{¶5} For ease of analysis, we elect to consider the assignments of error out of order. In the fourth assignment of error, Stacey contends he was prejudiced by the state's amendment of the indictment, which effectively converted a non-offense to the offense of rape. Stacey argues that such amendment violates R.C. 2901.03(A), which states that conduct does not constitute a criminal offense unless it is defined as an offense by the General Assembly, and Crim.R. 7(D) because the amendment effectively changed the name or identity of the crime charged. Essentially, Stacey argues that the prosecutor usurped the power of the grand jury in amending the indictment to charge him with a criminal offense. In response, the state contends that the error in the original indictment was a clerical error, and its correction thereof did not change the name or identity of the offense charged.

{¶6} The original indictment stated as follows:

**On or about the 22nd day of September 2006, in Seneca County, Ohio, PAUL N. STACEY did engage in sexual conduct with another, namely Jane Doe, *who is his spouse*, when the said Jane Doe was less than thirteen (13) years of age, namely five (5) years of age, whether or not the said Paul N. Stacey knew the age of the said Jane Doe.**

**SPECIFICATION: The Grand Jury do further find and specify that the victim, Jane Doe, under division (A)(1)(b) of this section was less than ten (10) years of age at the time of the commission of the offense, namely five (5) years of age.**

**This being in violation of Section 2907.02(A)(1)(b), (B) of the Ohio Revised Code and against the peace and dignity of the State of Ohio.**

*PENALTY*: **The penalty for this offense is a sentence of life imprisonment with parole eligibility as stated in R.C. Section 2967.13(A)(5) and/or a fine of up to $20,000.00.**

(Emphasis added). Indictment, Nov. 15, 2007. The indictment was amended on November 15, 2007 to identify the offense as a first-degree felony. At Stacey's arraignment on November 27, 2007, the court indicated that "there was an oral motion to amend the indictment." Hearing Tr., Mar. 5, 2009, at 4:14-15. Defense counsel stated that there was no objection to the amendment, and the court granted the motion. Id. at 4:16-18. The state filed a written motion to amend the indictment on November 28, 2007, and in its journal entry of November 29, 2007, the court amended the language of the indictment from "who is his spouse" to "not his spouse."

**{¶7}** Since an objection was not raised in the trial court, and since any alleged error in this case did not "result in multiple errors that [were] inextricably linked to the flawed indictment[,]" we must use the plain-error standard. *State v. Colon*, 119 Ohio St.3d 204, 2008-Ohio-3749, 893 N.E.2d 169, at ¶ 7, citing *State v. Colon*, 118 Ohio St.3d 26, 2008-Ohio-1624, 885 N.E.2d 917, at ¶ 23. Plain error will be recognized "'with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" *State v. Landrum* (1990), 53 Ohio St.3d 107, 110, 559 N.E.2d 710, quoting *State v. Long* (1978), 53 Ohio St.2d 91, 372 N.E.2d 804, at paragraph three of the syllabus.

Plain error will exist if the trial court deviated from a legal rule, the error constituted an obvious defect in the proceedings, and the error affected a substantial right of the accused. *State v. Barnes*, 94 Ohio St.3d 21, 27, 2002-Ohio-68, 759 N.E.2d 1240 (internal citations omitted).

{¶8} Crim.R. 7(D) allows a trial court to amend an indictment "at any time" so long as "no change is made in the name or identity of the crime charged." See also R.C. 2941.30. "An amendment to the indictment that changes the name or identity of the crime is unlawful whether or not the defendant was granted a continuance to prepare for trial; further, a defendant need not demonstrate that he suffered any prejudice as a result of the forbidden amendment." *State v. Fairbanks*, 172 Ohio App.3d 766, 2007-Ohio-4117, 876 N.E.2d 1293, at ¶ 21, citing *Middletown v. Blevins* (1987), 35 Ohio App.3d 65, 67, 519 N.E.2d 846. "A trial court commits reversible error when it permits an amendment that changes the name or identity of the crime charged." *Fairbanks*, at ¶ 21, citing *State v. Kittle*, 4th Dist. No. 04CA41, 2005-Ohio-3198, at ¶ 12; *State v. Headley* (1983), 6 Ohio St.3d 475, 478-479, 453 N.E.2d 716.

{¶9} "Where the 'name' of the crime remains the same, even after amendment, there is no violation of Crim.R. 7(D) regarding that prohibition." *State v. Craft*, 181 Ohio App.3d 150, 2009-Ohio-675, 908 N.E.2d 476, at ¶ 23, citing *State v. Davis*, 121 Ohio St.3d 239, 2008-Ohio-4537, 903 N.E.2d 609, at ¶ 5; *State v. Corrill* (1999), 133 Ohio App.3d 550, 552, 729 N.E.2d 403; *State v. Dukes,* 3d Dist. Nos. 1-02-64, 1-02-92, and 1-02-93, 2003-Ohio-2386, at ¶ 10. To

determine if the "identity" of a crime has changed, the court must examine whether the "penalty or degree" changed. Id. at ¶ 24, citing *Davis*, at syllabus.

{¶10} The language of the original and the amended indictments is set forth above, with the original indictment asserting that the five-year-old victim was Stacey's spouse at the time of the offense. The error in the original indictment was clearly clerical, and the amendment did not change the name or identity of the crime charged for it was factually and legally impossible for T.L. to be Stacey's spouse. Stacey was already married at the time of the offense, so to have been married to T.L. would have resulted in other criminal activity, namely bigamy. R.C. 2919.01(A). Furthermore, a minor must obtain consent to marry, and there was no evidence that such consent had been sought or obtained. R.C. 3101.01(A). Based on the factual and legal impossibility of T.L. being Stacey's spouse, we cannot find plain error because the clerical error in the original indictment did not change the name or identity of the offense charged. See *State v. Sloane*, 7th Dist. No. 06 MA 144, 2009-Ohio-1175, at ¶ 47-49 (trial court did not err by allowing the state to file a superseding indictment, which added the essential element that the victims were not the spouses of the defendant.). The fourth assignment of error is overruled.

{¶11} In the second assignment of error, Stacey contends that the trial court erred by not instructing the jury on the lesser-included offense of gross sexual imposition. Stacey argues that the testimony of the nurse who administered the rape kit essentially established reasonable doubt as to the element of

penetration, and therefore he was entitled to the instruction on gross sexual imposition, which requires sexual contact rather than sexual conduct.

{¶12} Stacey's defense was that he had not committed any sexual act with T.L. Trial Tr., Mar. 5, 2009, at 951; 971; 991. Stacey testified that he had not raped or had sexual contact with T.L. and during closing argument, counsel's main contention was that Stacey had been set up; essentially a complete defense of denial. Id. at 951; 971; 991; 1037. In his brief, Stacey focuses on the cross-examination of Jane Sayers, the nurse who had performed the rape kit on T.L. Stacey elicited testimony that T.L.'s hymen was intact, thus challenging the element of penetration. On cross-examination, Sayers testified as follows:

> **Q: So there was [sic] no tears on the hymen?**
> **A: That's correct. And as I previously said, it would be uncommon to find injury at that area. The hymen in – in that area is very elast – elasticized. It stretches a lot.**
> **Q: In – in regard to a five year old?**
> **A: Absolutely. Absolutely. It's very – we rarely see injuries.**
> **Q: Okay. Well, on the reverse side, if, uhm, if no penis had been in there with regard to any kind of sexual assault as described by, uhm – as you were investigating, the hymen would also be intact, would it not?**
> **A: That's correct.**
> **Q: So the fact that no tears were noted to the hymen would indicate that, uhm, that no penis had been in there, wouldn't that also be the case?**
> **A: Well, I can't say. I can only go by the history that was given to me and the findings that were found. And my his – the history that was given to me was consistent with the findings that were found.**
> **Q: Well, what would tears in the hymen – what would tears in the hymen indicate with you?**
> **\* \* \***

**A:** I've seen tears in the hymen, uhm, from straddle injuries, uhm, any kind of injuries, the child falling off something onto it. I've seen tears from a sexual assault, uhm…

**Q:** Wouldn't tears in the hymen deduce, as you just said, a sexual assault with a penis?

**A:** It could be. Yes, it could very well.

**Q:** But also no tears in the hymen would mean that there was no sexual assault?

**A:** I can't say that for sure because of the history that was given to me.

**Q:** I didn't – I didn't ask you for sure. I said it could mean there was no tears in the hymen, correct?

\* \* \*

**A:** That's correct.

**Q:** Which could mean that there was no sexual assault, which could mean –

**A:** Yes. Yes, it could mean. Yes.

Trial Tr., at 384-386. Sayer's testimony that an intact hymen could lead to the conclusion that no penetration had occurred is the foundation of Stacey's argument that he was entitled to a jury instruction on the lesser-included offense of gross sexual imposition.

{¶13} Gross sexual imposition is a lesser-included offense of rape. *State v. Lynch*, 98 Ohio St.3d 514, 2003-Ohio-2284, 787 N.E.2d 1185, at ¶ 83, citing *State v. Johnson* (1988), 36 Ohio St.3d 224, 522 N.E.2d 1082, at paragraph one of the syllabus. However, "when a defendant presents a complete defense to the substantive elements of the crime, such as an alibi, an instruction on a lesser included offense is improper." *State v. Bethel*, 110 Ohio St.3d 416, 2006-Ohio-4853, 854 N.E.2d 150, at ¶ 137, citing *State v. Strodes* (1976), 48 Ohio St.2d 113, 117, 357 N.E.2d 375.

**{¶14}** However, a defendant is entitled to an instruction on the lesser-included-offense "'only if, based on the evidence adduced by the state, the trier of fact can find for the defendant * * * on some element of the greater offense which is not required to prove the commission of the lesser offense and for the state on the elements required to prove the commission of the lesser offense.'" *Bethel*, at ¶ 138, quoting *State v. Solomon* (1981), 66 Ohio St.2d 214, 421 N.E.2d 139, at paragraph two of the syllabus. "'[I]f due to some ambiguity in the state's version of the events involved in a case the jury could have a reasonable doubt regarding the presence of an element required to prove the greater but not the lesser offense, an instruction on the lesser included offense is ordinarily warranted.'" Id., quoting *Solomon*, at 221.

> **"'While a trial court does have a duty to include instructions on lesser included offenses, a defendant still retains the right, through counsel, to waive such instructions.** *State v. Clayton* **(1980), 62 Ohio St.2d 45, 47, at fn. 2, 402 N.E.2d 1189. Given this right to waive jury instructions on lesser-included offenses, plain error does not lie where trial counsel failed to request jury instructions on lesser included offenses as a matter of trial strategy. Id. at 47, 402 N.E.2d 1189.'** *State v. Davis,* **9th Dist. No. 21794, 2004-Ohio-3246, at ¶ 18."**

*State v. Pigg*, 9th Dist. No. 24360, 2009-Ohio-2107, at ¶ 5. In this case, defense counsel told the court he would not request an instruction for any lesser-included offense. Trial Tr., at 999. Following *Clayton*, we find no plain error on this record.

**{¶15}** Even if we were to consider the testimony presented at trial to determine if an instruction on gross sexual imposition was warranted, there was no

evidence that would have permitted the jury to find Stacey not guilty of rape but guilty of gross sexual imposition. Sayers testified that during the examination, she first uses her fingers to separate the victim's labia majora, "which [are] the folds that cover the opening, cover the inside of the, uhm, genitalia. And also there is called the labia minora, which are the inner lips there. Uhm, we separate those a little bit and look." Id. at 351-352. She then "also use[s] something called labial traction where we actually take our fingers and we pull the inner labia, outer labia, away from the vaginal opening so that we're able to see that opening and the hymen area." Id. at 352.

{¶16} Stacey's argument is based on speculative testimony about the condition of T.L.'s hymen. Even if we accept Sayer's testimony elicited on cross-examination, other than his denial of committing the offense, Stacey did not rebut or challenge the evidence that his penis penetrated T.L.'s labia majora. Based on Sayer's testimony, it is clear that the labia majora are more external in the female genitalia than the hymen, thus requiring an object, such as a penis, to pass the labia majora before reaching the hymen. "This Court has previously held that vaginal penetration is proved when any object is applied with sufficient force to cause the labia majora to spread." *State v. Lindsey*, 3d Dist. No. 8-06-24, 2007-Ohio-4490, citing *State v. Farr*, 3d Dist. No. 13-06-16, 2007-Ohio-3136, at ¶ 17, citing *State v. Roberts*, 10th Dist. No. C-040547, 2005-Ohio-6391, at ¶ 62, fn. 11; *State v. Brewer*, 2d Dist. No. 03CA0074, 2004-Ohio-3572, at ¶ 31-32; *State v. Falkenstein*, 8th Dist. No. 83316, 2004-Ohio-2561; *State v. Grant*, 2d Dist. No.

19824, 2003-Ohio-7240; *State v. Blankenship* (Dec. 13, 2001), 8th Dist. No. 77900; *State v. Childers* (Dec. 19, 1996), 10th Dist. No. 96APA05-640-640; *State v. Nivens* (May 28, 1996), 10th Dist. No. 95 APA09-1236; *State v. Ulis* (July 22, 1994), 6th Dist. No. L-93-247; *State v. Carpenter* (1989), 60 Ohio App.3d 104, 573 N.E.2d 1206. As such, we cannot find plain error in the trial court's decision not to instruct the jury on the lesser-included offense of gross sexual imposition. The second assignment of error is overruled.

{¶17} In the third, fifth, and sixth assignments of error, Stacey contends his trial counsel was ineffective. In the third assignment of error, Stacey contends that counsel was ineffective for failing to request a jury instruction on gross sexual imposition, and that "any competent counsel would have sought to mitigate the damage by offering the jury the opportunity to find his client guilty of a lesser-included offense." In the fifth assignment of error, Stacey argues that trial counsel was ineffective for failing to object to the state's motion to amend the indictment to include the words "not the spouse" of the offender. In the sixth assignment of error, Stacey challenges several alleged instances of inadmissible hearsay to which trial counsel did not object. Stacey argues that counsel's failure to object deprived the trial court of the opportunity to exclude the hearsay evidence.

{¶18} In response to the third assignment of error, the state notes Stacey's refusal "to acknowledge any reason why his DNA would be on the crotch of [T.L.'s] underwear, so, logically, trial counsel's strategy of obtaining an acquittal was in line with Appellant's position that nothing at all of a sexual nature

happened between Appellant and [T.L.]." The state claimed that the jury was able to determine whether penetration occurred based on counsel's attempts to disprove penetration, his attempts to discredit the victim, and his attempts to create reasonable doubt concerning medical and scientific evidence. In regard to the fifth assignment of error, the state claims trial counsel knew Crim.R. 7(D) permitted amendment of the indictment based on a clerical error. To rebut the sixth assignment of error, the state contends that each example of alleged hearsay mentioned by the defense on appeal fell within a hearsay exception. Specifically, the state cites Evid.R. 803(2) to explain statements T.L. made to Joleen's boyfriend and statements T.L. made to Joleen. As to the statements T.L. made to Kristine Konley, a nurse who examined T.L. at the Fostoria hospital, and statements made to Sayers, the state contends that those statements were made for medical diagnoses and are exceptions to hearsay under Evid.R. 803(4). The state contends that trial counsel's failures to object demonstrated his knowledge of the Rules of Evidence and were not deficiencies.

{¶19} The Supreme Court of Ohio has established a two-part test to determine if trial counsel was ineffective. First, the defendant must show that counsel's performance fell below objective standards of reasonable representation, and second, the defendant must show resulting prejudice. *State v. Dickinson*, 3d Dist. No. 11-08-08, 2009-Ohio-2099, at ¶ 20, citing *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, at paragraph two of the syllabus. To show prejudice, the defendant "must prove that there exists a reasonable probability that,

- 14 -

but for counsel's errors, the outcome at trial would have been different. Id., citing *Bradley*, at paragraph three of the syllabus. "'Reasonable probability' is a probability sufficient to undermine confidence in the outcome of the trial.'" Id., quoting *State v. Waddy* (1992), 63 Ohio St.3d 424, 433, 588 N.E.2d 819, superseded by constitutional amendment on other grounds as recognized by *State v. Smith* (1997), 80 Ohio St.3d 89, 103, 684 N.E.2d 668.

**{¶20}** A defendant must also overcome the presumption that counsel is competent and must show that counsel's decisions were "not trial strategies prompted by reasonable professional judgment." Id. at ¶ 21, citing *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; *State v. Richardson,* 3d Dist. No. 13-06-21, 2007-Ohio-115, citing *State v. Hoffman* (1998), 129 Ohio App.3d 403, 407, 717 N.E.2d 1149. Even unsuccessful tactical or strategic decisions will not constitute ineffective assistance of counsel. Id., citing *State v. Carter* (1995), 72 Ohio St.3d 545, 558, 651 N.E.2d 965. An appellate court must review the totality of the circumstances and not isolated instances of an allegedly deficient performance. Id., citing *State v. Fritz*, 3d Dist. No. 13-06-39, 2007-Ohio-3138, at ¶ 35, citing *State v. Malone* (Dec. 13, 1989), 2d Dist. No. 10564.

**{¶21}** This court has previously held that trial counsel's failure to object does not establish ineffective assistance of counsel. *State v. Turks*, 3d Dist. No. 1-08-44, 2009-Ohio-1837, at ¶ 43, citing *State v. Conway* (2006), 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 103. "Furthermore, trial counsel's

failure to object is generally viewed as trial strategy and does not establish ineffective assistance."  Id., citing *State v. McKinney,* 11th Dist. No.2007-T-0004, 2008-Ohio-3256, at ¶ 191, citing *State v. Hunt* (1984), 20 Ohio App.3d 310, 311, 486 N.E.2d 108; *State v. Gumm* (1995), 73 Ohio St.3d 413, 428, 653 N.E.2d 253. Based on this record, it appears that trial counsel's strategy was to attain an acquittal for his client, without giving the jury the opportunity to consider a lesser-included offense for a serious charge concerning a five-year old victim.  Counsel attempted to discredit the victim, Joleen, Willie Jordan, and each nurse apparently in an attempt to raise reasonable doubt and obtain an acquittal for his client.  The alleged hearsay statements were supported when the victim, T.L., testified and was subject to cross-examination.  On this record, we cannot find that Stacey was prejudiced by the lack of objections to certain instances of alleged hearsay or by counsel's professional decision to seek an acquittal on his client's behalf.

{¶22} As to the issue concerning the indictment, we presume that trial counsel was aware of the law, including Crim.R. 7(D), the age of the victim, which was established in the indictment, and the legal impossibility of the wording of the original indictment.  Counsel apparently opted not to object to the amendment of the indictment and to otherwise fight the charge against his client. We have previously held that "'[i]neffective assistance does not exist merely because counsel failed "to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it."'"  *State v. Tosco*, 3d Dist. No. 9-08-21, 2009-Ohio-408, at ¶ 35, quoting *State v. Malone* (Dec. 13, 1989), 2d Dist. No.

- 16 -

10564, quoting *Smith v. Murray* (1986), 477 U.S. 527, 106 S.Ct. 2661, 91 L.Ed.2d 434. Even if counsel had objected, the outcome of the case would not have been different considering the overwhelming evidence against Stacey.

{¶23} In the first assignment of error, Stacey contends that his classification as a Tier III sex offender violates the ex post facto clause of the United States Constitution and the retroactivity clause of the Ohio Constitution because his offense was committed prior to the effective date of Senate Bill 10, also known as the Adam Walsh Act. This court has previously found both contentions to be misplaced based on *State v. Cook* (1998), 83 Ohio St.3d 404, 700 N.E.2d 570, and *State v. Williams* (2000), 88 Ohio St.3d 513, 728 N.E.2d 342, and we are bound by the principle of stare decisis to our prior decisions. *Holcomb v. State*, 3d Dist. Nos. 8-08-23, 8-08-24, 8-08-25, 8-08-26, 2009-Ohio-782, at ¶ 9, citing *In re Smith*, 3d Dist. No. 1-07-58, 2008-Ohio-3234, at ¶ 26-35; 38; *Downing v. State*, 3d Dist. No. 8-08-29, 2009-Ohio-1834, at ¶ 15, citing *In re Copeland*, 3d Dist. No. 1-08-40, 2009-Ohio-190, at ¶ 11. The first assignment of error is overruled.

{¶24} In the seventh assignment of error, Stacey argues that cumulative errors deprived him of a fair trial. Having reviewed the record, we conclude Stacey received a fair trial. See *State v. Jones* (2000), 90 Ohio St.3d 403, 422, 739 N.E.2d 300, citing *State v. Lott* (1990), 51 Ohio St.3d 160, 166, 555 N.E.2d 293, quoting *United States v. Hastings* (1983), 461 U.S. 499, 508-509, 103 S.Ct. 1974, 76 L.Ed.2d 96 (litigants are entitled to a fair trial, not a perfect trial.). We are also

mindful of the Supreme Court of Ohio's holding that errors do not "'become prejudicial by sheer weight of numbers.'" *State v. Were*, 118 Ohio St.3d 448, 2008-Ohio-2762, 890 N.E.2d 263, at ¶ 261, quoting *State v. Hill* (1996), 75 Ohio St.3d 195, 212, 661 N.E.2d 1068. The seventh assignment of error is overruled.

{¶25} The judgment of the Seneca County Common Pleas Court is affirmed.

*Judgment Affirmed*


**PRESTON, P.J., concurs.**
**ROGERS, J., concurs in Judgment,**
**concurs in Judgment Only on Assignment of Error No. 1.**


/jnc