OPINION
{¶ 1} Appellant, Richard Clark, was convicted of gross sexual imposition of a minor in violation of R.C. § 2907.05(A)(4), a felony of the third degree, and rape in violation of R.C. §2907.02(A)(1)(b)(B), a felony of the first degree following a jury trial in the Mahoning County Court of Common Pleas. He was sentenced on June 22, 2004, to five years of incarceration for gross sexual imposition consecutive to life imprisonment on the rape conviction. Appellant was also deemed a sexual predator. Appellant's untimely leave to file his notice of appeal was sustained by this Court. (Nov. 16, 2004, Journal Entry.)
 {¶ 2} Appellant's convictions stem from an incident that occurred at his son's birthday party sleep-over on November 9, 2002, in Youngstown, Ohio. Appellant fondled and performed oral sex on his son's twelve-year-old friend after his son fell asleep. For the following reasons, Appellant's convictions are affirmed in full.
 {¶ 3} Appellant asserts four assignments of error on appeal. His first assignment of error claims:
 {¶ 4} "THE TRIAL COURT ERRED WHEN IT ALLOWED THE STATE OF OHIO TO PROCEED ON THE SUPERCEDING INDICTMENT OUTSIDE OF THE APPELLANT'S STATUTORY AND CONSTITUTIONAL RIGHT TO A SPEEDY TRIAL."
 {¶ 5} Appellant argues that the superceding indictment violated his statutory and constitutional right to a speedy trial. Thus, he claims that his convictions should be vacated.
 {¶ 6} The relevant procedural history is as follows: Appellant was originally indicted on April 24, 2003, on one count of rape in violation of R.C. § 2907.02(A)(1)(b)(B) and one count of gross sexual imposition in violation of R.C. §2907.05(A)(4)(B), a third degree felony. The indictment included two sexual predator specifications. It also indicated that the rape offense was, "a Felony punishable by life imprisonment." (April 24, 2003, Indictment.)
 {¶ 7} Appellant subsequently waived his right to a speedy trial on June 6, 2003.
 {¶ 8} Thereafter, on March 4, 2004, the grand jury issued a superceding indictment against Appellant. It charged him with the same two counts and the sexual predator specifications. However, this indictment added language required by R.C. § 2907.02(B), i.e., that Appellant, "purposely compelled [the minor victim] to submit by force or threat of force." (March 4, 2003, Superceding Indictment.)
 {¶ 9} While this language was not in the original indictment, this statutory subsection was twice identified in the original indictment. Further, the original indictment also twice stated that Appellant's offense was punishable by life imprisonment. (April 24, 2003, Indictment.)
 {¶ 10} Appellant bases this claimed error on several cases, including the Ohio Supreme Court's decision in State v. Adams
(1989), 43 Ohio St.3d 67, 538 N.E.2d 1025. The Supreme Court inAdams held that, "[w]hen an accused waives the right to a speedy trial as to an initial charge, this waiver is not applicable to additional charges arising from the same set of circumstances that are brought subsequent to the execution of the waiver." Id. at syllabus.
 {¶ 11} The defendant in Adams was initially charged with a violation of R.C. § 4511.19(A)(3). Thereafter, he was charged under R.C. § 4511.19(A)(1), operating a motor vehicle while under the influence of alcohol based on the same facts and circumstances. The trial court subsequently found that the speedy trial waiver as to the first charge extended to the second. The court of appeals agreed. However, the Supreme Court held that Adams' waiver to the second charge was not knowingly, voluntarily, and intelligently made because the charges were distinct and both, "could involve different defenses at time of trial." Id. at 69.
 {¶ 12} The Supreme Court explained that the fact that Adams was not driving on a public road would have been an effective defense to the original charge. Since this was not a valid defense to the offense as amended, Appellant could not have made a knowing and intelligent waiver of his right to a speedy trial because he did not know, "the exact nature of the crime he [was] charged with," when he executed the waiver. Id. at 70.
 {¶ 13} Appellant also directs this Court's attention toState v. Luff (1993), 85 Ohio App.3d 785, 621 N.E.2d 493, in support of this claimed error. Luff was initially indicted on five counts of aggravated murder, each with two death penalty specifications, and five counts of kidnapping. Luff waived his speedy trial rights. Id. at 794.
 {¶ 14} Thereafter, Luff was again indicted on five counts of aggravated murder and five counts of kidnapping arising from the same facts and circumstances under a different case number. This indictment, however, also included an additional death penalty specification and an added count of aggravated robbery. Id. Luff subsequently asked the trial court to dismiss the indictment because his constitutional and statutory speedy trial rights were violated.
 {¶ 15} The trial court agreed in part and dismissed the additional death specification and the aggravated robbery charge. Thus, the remaining indictment was identical to the original indictment. On appeal, the appellate court agreed with the trial court's decision and allowed the original charges to remain pending. It distinguished the Adams decision finding that, "Luff's ability to defend himself was not impaired through the application of his previous speedy trial waiver as he remained fully apprised of the charges against him." Id. at 797.
 {¶ 16} Appellant argues in the instant matter that the new indictment in his case changed the potential punishment that he faced. As such, it clearly changed the nature of the offense. Thus, he argues that the original speedy trial waiver should not apply and his conviction should be vacated.
 {¶ 17} Appellant fails to recognize that Adams and Luff,
supra, are distinguishable from this matter. As previously indicated, Appellant was fully aware of the charges against him, and the state issued the superceding indictment to add statutorily mandated language. The superceding indictment did not change the charged offenses nor did it add any additional charges. Appellant's original indictment twice referred to the fact that Appellant was facing life imprisonment, and it cited R.C. § 2907.02(B) twice. (April 24, 2003, Indictment.)
 {¶ 18} The state could have simply amended the charge as authorized in Crim.R. 7(D) instead of issuing a superceding indictment, since no change was made in the name or identity of the crime charged. Further, Appellant did not attempt to revoke his prior speedy trial waiver once the superceding indictment issued.
 {¶ 19} Finally, Appellant, himself, in his speedy trial waiver specifically identified the statutory subsection, R.C. §2907.02(B), which made his charged offense punishable by life imprisonment. (June 6, 2003, Waiver of Right to Speedy Trial.)
 {¶ 20} Based on the foregoing, Appellant was fully aware of the charged offenses when he executed a waiver of his right to a speedy trial. His waiver was knowingly, voluntarily, and intelligently made. Adams, supra, at 69. Accordingly, this waiver extends to his superceding indictment, and this assignment of error is overruled.
 {¶ 21} Appellant's second assignment of error claims:
 {¶ 22} "THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHICH DEPRIVED THE APPELLANT OF HIS CONSTITUTIONALLY PROTECTED RIGHT TO A FAIR TRIAL BY ALLOWING THE STATE TO ADMIT OTHER ACTS EVIDENCE"
 {¶ 23} Appellant argues that the trial court erred in admitting the testimony of Appellant's stepson, who testified that Appellant had repeatedly raped him since he was eight years old. Appellant claims that this evidence should have been excluded for two reasons. First, Appellant argues that this evidence was inadmissible other acts evidence under Ohio's rape shield law set forth in R.C. § 2907.02(D). Appellant also argues that the testimony should have been excluded since it concerned an act which was too distant in time to be probative.
 {¶ 24} The state filed a motion in limine to introduce Appellant's similar acts evidence. Appellant's counsel objected. Following a hearing, the trial court issued a ruling indicating that it would sustain the state's motion and allow the similar acts evidence as outlined in the state's motion. (Motion Tr., p. 17.)
 {¶ 25} Thereafter, Appellant did not raise this objection at trial. Accordingly, this Court can only review this assignment for plain error. State v. Grubb (1986), 28 Ohio St.3d 199,201-202, 503 N.E.2d 142, 28 OBR 285. Reversal for plain error is warranted only when the outcome of the trial would have been different without the error. State v. Mitts (1998),81 Ohio St.3d 223, 690 N.E.2d 522, reconsideration denied82 Ohio St.3d 1444, 695 N.E.2d 266. Further, plain error is only found in exceptional circumstances to prevent a miscarriage of justice.State v. Lundgren (1995), 73 Ohio St.3d 474, 653 N.E.2d 304, reconsideration denied 74 Ohio St.3d 1422, 655 N.E.2d 742.
 {¶ 26} A trial court generally has broad discretion in admitting evidence. State v. Maurer (1984), 15 Ohio St.3d 239,265, 15 OBR 379, 401, 473 N.E.2d 768. That said, evidence of a criminal defendant's prior criminal acts is generally inadmissible. State v. Thompson (1981), 66 Ohio St.2d 496, 497,422 N.E.2d 855. R.C. § 2945.59 identifies exceptions to this rule:
 {¶ 27} "In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant."
 {¶ 28} Further, Evid.R. 404(B) provides:
 {¶ 29} "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."
 {¶ 30} The exceptions which permit other acts evidence must be strictly construed against admissibility. State v. Broom
(1988), 40 Ohio St.3d 277, 533 N.E.2d 682, syllabus.
 {¶ 31} In the instant matter, the state argued that the evidence of Appellant's other bad acts demonstrated his modus operandi, plan, purpose, and knowledge. Thus, this Court must assess whether the elicited testimony regarding Appellant's other acts tended to establish an applicable exception. State v.Curry (1975), 43 Ohio St.2d 66, 70, 330 N.E.2d 720.
 {¶ 32} The trial court conducted a hearing on this issue. The state argued that Appellant's prior bad acts showed that Appellant had a plan and a purpose to attack pre-pubescent boys at night while they were either sleeping or about to sleep. Additionally, the state asserted that this other acts evidence demonstrated that Appellant was in a position of authority to each victim, and each victim was surprised and in a vulnerable state.
 {¶ 33} The trial court concluded that even though this evidence was prejudicial to Appellant, the evidence, "is probative of whether this defendant acted in conformity with a plan and purpose and intent to commit these sexual offenses against this victim." (Motion Tr., p. 16.)
 {¶ 34} Appellant argues that the prior similar acts in this case should have been excluded since they were not, "part of the immediate background of the crime charged, and hence [were not] `inextricably related' to the act alleged in the indictment[.]"Thompson, supra at 498, 422 N.E.2d 855. Thus, he argues that his stepson's testimony was not necessary to give a, "complete picture of the alleged crime." Id.
 {¶ 35} Appellant also claims that the trial court erred in failing to consider R.C. §§ 2907.02(D) and 2907.05(D), which provide in pertinent part:
 {¶ 36} "Evidence of specific instances of the defendant's sexual activity, * * * shall not be admitted under this section unless it involves evidence of the origin of semen, pregnancy, or disease, the defendant's past sexual activity with the victim, or is admissible against the defendant under section 2945.59 of the Revised Code, and only to the extent that the court finds thatthe evidence is material to a fact at issue in the case and thatits inflammatory or prejudicial nature does not outweigh itsprobative value." (Emphasis added.)
 {¶ 37} Appellant's trial counsel argued that the prejudicial effect of this evidence would be too great and taint the jury. Appellant is correct in that the trial court erroneously failed to make a specific finding in this regard as required in R.C. §§2907.02(D) and 2907.05(D). However, the trial court did discuss the prejudicial effect of such evidence, and it decided to admit it notwithstanding.
 {¶ 38} Thereafter, the trial court concluded that this evidence may be admissible to prove his identity since, "it appears that the evidence is probative of whether this defendant acted in conformity with a plan and purpose and intent to commit these sexual offenses against this victim." (Motion Tr., p. 16.) It also noted that this evidence may be admissible to help to establish Appellant's identity, his intent, and/or his absence of mistake depending on the evidence at trial. (Motion Tr., pp. 16-17.)
 {¶ 39} The trial court subsequently allowed the evidence at trial without objection from Appellant's counsel. Prior to the testimony, there was an off-the-record discussion between the judge and counsel out of the hearing of the jury.
 {¶ 40} Thereafter, the trial court twice provided a special jury instruction on this issue:
 {¶ 41} "[E]vidence may be received about the commission of acts other than the offenses with which the defendant is charged in this trial. This evidence will be received only for a limited purpose. * * * you may not consider it to prove the character of this particular defendant in order to show that he acted in conformity with that character. If you find that the evidence of other acts is true and that the defendant committed another act, you may consider that evidence only for the purpose of deciding whether it proves or helps to prove the defendant's intent or purpose in this case or his preparation or plan to commit the offense charged in this trial. The evidence cannot be considered by you for any other purpose." (Tr., pp. 404, 616-617.)
 {¶ 42} At trial, Appellant's stepson testified that he was molested and raped by Appellant for a period of years while he lived with Appellant. The stepson indicated that this lasted for many years, beginning when he was about eight years old. He also testified that the inappropriate touching and rapes began with Appellant rubbing his legs and trying to comfort him by telling him that, "it was okay for a man to touch a boy in such a manner[.]" (Tr., p. 407.) He also indicated that Appellant would tell him to trust him and that Appellant would compliment his body. Most of the incidences occurred at night. (Tr., pp. 407, 411, 413.)
 {¶ 43} Appellant's stepson also stated that his friends later told him that Appellant had touched them inappropriately as well. He also repeatedly saw Appellant performing oral sex on his brother. He testified that Appellant promised him gifts in exchange for sex, and Appellant showed him pornographic movies in an attempt to seduce him. (Tr., pp. 408-410.)
 {¶ 44} The victim in the instant cause testified that he was at Appellant's son's birthday party when he was twelve years old. He was to spend the night at Appellant's house for the first time, which was immediately next door to his family's home. (Tr., p. 263.)
 {¶ 45} Appellant and the boys watched four movies that night. During the third movie, Appellant started rubbing the victim's pants. At that time, the victim's friend had left the room and Appellant's other son was asleep. Appellant pulled down the victim's pants somewhat and rubbed his penis. They were sitting on the couch at the time. The victim testified that Appellant told him that he, "should trust him, stuff like do I trust him, do I want to come over on weekends." (Tr., pp. 263, 269, 270.)
 {¶ 46} The victim said that he was afraid and that he was trying to think of a way to get Appellant to stop. However, he did not tell Appellant to stop because he was afraid. Appellant also complimented the victim, telling him that his legs were big and strong. (Tr., p. 271.)
 {¶ 47} Thereafter, Appellant again rubbed the victim's pants when his son fell asleep. He rubbed the victim's penis and started performing oral sex on him. During this time, Appellant asked the victim if he trusted him, and he told the victim that he had a good family. Appellant also told the victim that he should trust him and that he would never hurt him. At some point, the victim asked Appellant to stop so he could retrieve something from his book bag. The victim grabbed his book bag and ran from the house. This occurred at about 3:00 a.m. (Tr., pp. 274-275, 277.)
 {¶ 48} The introduction of Appellant's stepson's testimony was not error in the instant matter since his trial testimony paralleled the victim's testimony to some extent. Both were young boys raped by Appellant. Appellant was in a position of authority over both victims, and both boys were advised by Appellant to trust him. He also complimented both boys' bodies. Further, his stepson described most of the offenses as occurring at nighttime, and the victim in this case also described being raped in the middle of the night.
 {¶ 49} Thus, the trial court was within its discretion in admitting the stepson's testimony. However, and as noted previously, the trial court failed to assess on the record whether the inflammatory or prejudicial nature of the testimony outweighs its probative value as prescribed in R.C. §§ 2907.02(D) and 2907.05(D). While this appears erroneous, it does not amount to plain error, since the outcome of the trial would have been the same without this particular error. The victim's testimony clearly supports the convictions.
 {¶ 50} Further, the victim's mother testified that her son came home in the middle of the night on the evening of the sleepover. He was scared and shaking, and he told her that the Appellant had sexually assaulted him. (Tr., p. 337.)
 {¶ 51} Two Youngstown Police Department ("YPD") detectives also testified. Detective Sergeant Alice Tanner interviewed the victim and Appellant, and she indicated that Appellant knew what the allegations were before the interview began. The victim did not reveal that Appellant had committed an act of oral sex when the victim talked to her. (Tr., p. 388.) Thereafter, however, the victim advised a pretext call specialist from Cincinnati that Appellant performed oral sex on him. The child did not initially reveal this aspect of the offense because he was embarrassed that he allowed it to occur. (Tr., p. 395.)
 {¶ 52} Based on the foregoing, the record reflects that any error here was harmless. Crim.R. 52(B).
 {¶ 53} Appellant next claims under this assignment of error that his stepson's testimony was too remote in time to be introduced at trial since he was 34 at the time of trial and the offenses against him occurred from the time he was eight years old until he was approximately sixteen years old. Thus, the last act of alleged rape or molestation would have occurred about eighteen years ago.
 {¶ 54} Appellant directs this Court's attention to State v.Henderson (1991), 76 Ohio App.3d 290, 601 N.E.2d 596, in support of this argument. The court in Henderson discussed the decision in State v. Chapman (1959), 111 Ohio App. 441, 15 O.O.2d 19,168 N.E.2d 14. In that case,
 {¶ 55} "the victim testified that the defendant had had relations with her eight years prior to the time complained of in the indictment. The court found that the isolated act was too remote in time to be admissible under R.C. 2945.59, and also found the evidence inadmissible because the act took place in an entirely different setting and time." Id. at 294.
 {¶ 56} The Henderson court also referenced State v.Strobel (1988), 51 Ohio App.3d 31, 554 N.E.2d 916. The Strobel
court held that testimony concerning acts occurring thirteen and twenty-six years earlier were too remote to be admitted under either Evid.R. 404(B) or R.C. § 2945.59. Id.
 {¶ 57} Again, however, Appellant's counsel did not raise an objection to this effect during the stepson's testimony at trial. Thus, Appellant waived all but plain error. To constitute plain error, it must appear in the record that an error occurred and that, except for that error, the outcome of trial would have been different. State v. Napier (1995), 105 Ohio App.3d 713,664 N.E.2d 1330, appeal not allowed 74 Ohio St.3d 1498,659 N.E.2d 314.
 {¶ 58} As previously indicated, a review of the victim's testimony alone prevents a finding of plain error in this case. The victim described his sexual assault and rape by Appellant in detail. Thereafter, his story was corroborated by his mother and two YPD detectives. The record reflects that Appellant would have been convicted absent the introduction of his stepson's testimony.
 {¶ 59} We must note here that, because Appellant undoubtedly would have been convicted without the allegedly erroneous testimony, in the future the state may want to be more cautious with this type of testimony. While under the present facts any error is harmless, there could certainly arise in the future a similar matter where only a slight change in facts would cause us to rule otherwise. This type of testimony is dangerously close to overreaching on the part of the state.
 {¶ 60} Despite this, based on the record as presented here, this assignment of error lacks merit in its entirety.
 {¶ 61} Appellant's third assignment of error claims:
 {¶ 62} "THE DEFENDANT WAS DENIED HIS RIGHT TO A FAIR TRIAL WHEN THE TRIAL COURT ALLOWED IMPROPER CROSS-EXAMINATION CONCERNING A PRIOR CONVICTION WHICH WAS OUTSIDE THE 10 YEAR LIMIT AND ALLOWED THE STATE TO INTRODUCE THE CERTIFIED COPY OF THE JUDGMENT OF CONVICTION."
 {¶ 63} Evid.R. 609(A)(2) provides:
 {¶ 64} "Notwithstanding Evid. R. 403(A), but subject to Evid. R. 403(B), evidence that the accused has been convicted of a crime is admissible if the crime was punishable by death or imprisonment in excess of one year pursuant to the law under which the accused was convicted and if the court determines that the probative value of the evidence outweighs the danger of unfair prejudice of confusion of the issues, or of misleading the jury."
 {¶ 65} Evid.R. 609(B), time limit, provides in part:
 {¶ 66} "Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement, or the termination of community control sanctions, post-release control, or probation, shock probation, parole, or shock parole imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect."
 {¶ 67} The trial court has broad discretion in determining whether prior convictions will be admitted pursuant to Evid.R. 609, and the extent to which such testimony will be used. Statev. Wright (1990), 48 Ohio St.3d 5, 548 N.E.2d 923, syllabus.
 {¶ 68} Appellant was released from probation February 3, 1994, for his prior offenses. Trial on Appellant's current charges did not commence until June 1, 2004. This was beyond the ten-year limit by approximately four months. Recognizing this, the trial court initially concluded that this was, "close enough, unless somebody can tell me how three months makes a difference." (Motion Tr., p. 21.) This statement on its face was improper.
 {¶ 69} The trial court attempted to justify this remark by stating that the state's motion indicating its intent to use Appellant's conviction as evidence was filed within the ten-year time limit. The court reasoned that Appellant should not benefit from the continuances filed by his counsel. (Motion Tr., pp. 21-22.) However, the record does not reveal that Appellant sought any continuances after the state filed its motion seeking to introduce similar act evidence.
 {¶ 70} The Eighth Appellate District has rejected the argument that the ten-year time limit should apply to the date of the new offense, and not the date of trial. It held, "[t]he mention of a prior offense has no relationship to the charge being prosecuted. The purpose of such inquiry is a test of the credibility of a witness. Reasonably, the time limit would apply to the date upon which the witness testifies." (Citations omitted.) State v. Chambers (1984), 21 Ohio App.3d 99, 100,486 N.E.2d 1163.
 {¶ 71} Based on the foregoing, the trial court erred in concluding that the three month gap was "close enough." However, the trial court's subsequent stated reason for allowing the evidence to be introduced was within its discretion. The court validly concluded, somewhat belatedly, "the probative value of such conviction in reliance upon what's been presented in the motion to allow similar acts substantially outweighs any prejudicial effect of the prior conviction[.]" (Motion Tr., p. 22.) This stated reason does comply with the exception identified in Evid.R. 609(B).
 {¶ 72} A review of Appellant's cross-examination reveals that Appellant's credibility was in dispute. Appellant was asked at least twice whether his stepson was lying and he repeatedly gave unresponsive answers. He also indicated that the victims involved in his previous convictions were lying:
 {¶ 73} "Q You heard your stepson testify?
 {¶ 74} "A Yes.
 {¶ 75} "Q And he is not lying; is he?
 {¶ 76} "A Nineteen years ago everything was rough.
 {¶ 77} "Q Let me try it again. He is not lying; is he?
 {¶ 78} "A I can't tell you for sure.
 {¶ 79} "Q You don't know?
 {¶ 80} "A I can't tell you for sure.
 {¶ 81} "Q You abused him and the other children for years, and you are sitting here telling these people you don't know?
 {¶ 82} "A I could look them [the jury] in the eye and tell them that they all said the same thing. They all said that it happened for years, and they all had no physical evidence, no evidence of abuse or trauma —
 {¶ 83} "* * *
 {¶ 84} "A I am fighting for my life here.
 {¶ 85} "Q Definitely. And you were convicted of four counts of gross sexual imposition?
 {¶ 86} "* * *
 {¶ 87} "A The judge found me guilty.
 {¶ 88} "* * *
 {¶ 89} "Q Okay. And so the other three children were lying also; is that correct?
 {¶ 90} "A I don't know why they said what they said.
 {¶ 91} "* * *
 {¶ 92} "Q Were the other three children who said that you molested them that you were convicted of molested lying also?
 {¶ 93} "A I think there was a situation with them with their mother.
 {¶ 94} "Q Did they lie, sir? Did they lie?
 {¶ 95} "A Yes." (Tr. pp. 490-493.)
 {¶ 96} Based on the foregoing, the trial court did not abuse its discretion in determining that the probative value of the prior convictions substantially outweighed the prejudicial effect of such convictions. Appellant acknowledged his convictions, but then claimed that the victims were lying. Appellant's credibility was in issue and the convictions were relevant in assessing Appellant's credibility during his testimony. Thereafter, the trial court again advised the jury about the limited use of this testimony. (Tr., p. 617.)
 {¶ 97} Despite the trial court's partially erroneous reasoning for allowing the use of Appellant's previous convictions, the court gave a second, permissible reason for allowing this evidence which is fully substantiated in the record. Thus, this assignment of error also lacks merit
 {¶ 98} Appellant's final assignment of error claims:
 {¶ 99} "THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT NEGLECTED TO BIFURCATE THE TRIAL FROM THE SEXUALLY VIOLENT PREDATOR SPECIFICATION AS IS REQUIRED BY 2971.02 OF THE OHIO REVISED CODE."
 {¶ 100} Appellant's indictment included two sexually violent predator specifications pursuant to R.C. § 2941.148. The state subsequently dismissed one of the specifications. Thereafter, the jury concluded that Appellant should be deemed a sexually violent predator. (Tr., p. 648.)
 {¶ 101} Appellant now takes issue with the fact that the jury was instructed to determine the sexually violent predator specification at the same time that it was considering Appellant's guilt as to the underlying offenses. Appellant did not object to this instruction at trial, and again, waived all but plain error.
 {¶ 102} This Court has discretion pursuant to Crim.R. 52(B), to recognize plain errors or defects affecting substantial rights. Plain error is only found in exceptional circumstances in order to prevent the miscarriage of justice. State v. Lundgren
(1995), 73 Ohio St.3d 474, 653 N.E.2d 304, reconsideration denied74 Ohio St.3d 1422, 655 N.E.2d 74. A reversal for plain error is only warranted when the outcome of the trial would have been different without the error. State v. Mitts (1998),81 Ohio St.3d 223, 690 N.E.2d 522, reconsideration denied82 Ohio St.3d 1444, 695 N.E.2d 266.
 {¶ 103} The procedure for determining if an individual is a sexually violent predator is set forth in R.C. § 2971.02:
 {¶ 104} "In any case in which a sexually violent predator specification is included in the indictment, count in the indictment, or information charging a sexually violent offense and in which the defendant is tried by a jury, the defendant may elect to have the court instead of the jury determine the specification. If the defendant does not elect to have the court determine the specification, the defendant shall be tried before the jury on the charge of the offense, and, following a verdictof guilty on the charge of the offense, the defendant shall betried before the jury on the sexually violent predatorspecification." (Emphasis added.)
 {¶ 105} Appellant in the instant case did not request that the trial court, and not the jury, address the violent sexual predator specification. Thus, the specification should have been tried to the jury only after it found Appellant guilty of the underlying offenses. This did not occur. Instead, the trial court submitted both the underlying offenses and the sexually violent predator specification at the same time to the jury. This is contrary to the procedure identified in R.C. § 2971.02.
 {¶ 106} In explaining its decision, the trial judge compared this to a firearm specification. He noted that he would have to remind the jury of the presumption of innocence, the burden of proof, and witness credibility. (Tr., p. 554.) The trial court further explained his decision to join the two based on the fact that no one requested bifurcation; noting, "the process appears that they should be tried separately, but no one made that request, and it appeared to me that we were trying them all together." (Tr., p. 555.)
 {¶ 107} Thereafter, the trial court gave the jury instructions as to the underlying offenses and the sexually violent offender specification at the same time. The instructions of law as to the specification, including the factors to consider, appear to be complete. (Tr., pp. 624-625.) The jury subsequently returned with guilty verdicts as to the charges and a finding that Appellant was a sexually violent offender.
 {¶ 108} However, prior to returning this finding, the jurors asked the trial court, to, "[e]xplain violent sexually predator, violent sexual predator." (Tr., p. 642.) The trial court again provided the jury the appropriate instructions, including the presumption of innocence and the factors to be considered. (Tr., pp. 642-645.) The jury reached a verdict less than thirty minutes later. (Tr., p. 647.)
 {¶ 109} Based on the foregoing, the trial court erred in failing to bifurcate the sexually violent predator determination from the underlying offenses. The statute clearly requires bifurcation. However, Appellant failed to object and based on the overwhelming evidence in support of the jury's verdict, the error was harmless in this case. Crim.R. 52(B).
 {¶ 110} In conclusion, while the trial court did commit certain errors in this case, all of the errors were harmless. We hereby affirm Appellant's convictions in their entirety.
Donofrio, P.J., concurs.
Vukovich, J., concurs.