[Cite as *State v. Johnson*, 2013-Ohio-856.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee , | : | CASE NO. CA2011-09-169 |
| - vs - | : | O P I N I O N<br>3/11/2013 |
| | : | |
| TYREE LEE JUAN JOHNSON, | : | |
| Defendant-Appellant. | : | |

CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CR2010-11-1867

Michael T. Gmoser, Butler County Prosecuting Attorney, Lina N. Alkamhawi, Government Services Center, 315 High Street, 11th Floor, Hamilton, Ohio 45011, for plaintiff-appellee

John J. Scaccia, 1814 East Third Street, Dayton, Ohio 45403, for defendant-appellant

**RINGLAND, P.J.**

{¶ 1} Defendant-appellant, Tyree Lee Juan Johnson, appeals from his conviction in the Butler County Court of Common Pleas for aggravated robbery and felonious assault.

{¶ 2} On October 4, 2010, Hamilton police filed a delinquency complaint against appellant, aged 17, in the Butler County Juvenile Court, charging him with three counts of aggravated robbery and three counts of felonious assault. Appellant was held in detention from that point onward. On October 18, 2010, the state filed a "Notice of Intent to

Bindover/Relinquish Jurisdiction," requesting that the juvenile court transfer appellant to the General Division of the Court of Common Pleas for prosecution as an adult. The juvenile court scheduled a Juv.R. 30(A) probable cause hearing for November 16, 2010. After the hearing, the juvenile court found probable cause that appellant committed the offenses, and therefore ordered the case to be transferred to the general division of the court.

{¶ 3} On December 21, 2010, a Butler County Grand Jury returned a five-count indictment against appellant for two counts of aggravated robbery, both first-degree felonies in violation of R.C. 2911.01(A)(1), and three counts of felonious assault, all second-degree felonies in violation of R.C. 2903.11(A)(2). Each charge carried a firearm specification in violation of R.C. 2941.145.

{¶ 4} On December 29, 2010, counsel of record for appellant moved to withdraw, citing his inexperience with felony cases. During appellant's arraignment on January 5, 2011, the trial court granted counsel's motion to withdraw and appointed new counsel for appellant. On January 11, 2011, appellant's new counsel filed motions for discovery and a bill of particulars, and also requested court-ordered funds for a private investigator.

{¶ 5} On January 12, 2011, the parties appeared before the court for a plea or trial setting. In order to comply with appellant's speedy-trial rights, the court scheduled a jury trial for February 7, 2011.

{¶ 6} On January 20, 2011, the trial court granted appellant's motion for funds for a private investigator, and on January 24, 2011, the state responded to appellant's discovery request and furnished a bill of particulars.

{¶ 7} On January 27, 2011, appellant moved to continue the February 7, 2011 trial in order to have additional time to prepare for trial and to complete discovery.

{¶ 8} On February 2, 2011, the trial court granted appellant's request for a continuance and reset trial for April 18, 2011. Also on February 2, 2011, appellant executed

a general time waiver, however, the waiver was not journalized until March 11, 2011. On February 10, 2011, the defense filed a Motion for Additional Counsel, and on February 23, 2011, the defense moved to appoint an expert witness, and also requested additional funds for appellant's private investigator. However, appellant withdrew the motions for an expert witness and additional funds on March 3, 2011.

{¶ 9} On March 30, 2011, the state filed a superseding indictment, charging appellant for the same five counts as the original indictment. The superseding indictment was issued as a result of allegations that the former assistant prosecutor had added firearm specifications to appellant's original indictment that were not considered by the grand jury.

{¶ 10} On April 4, 2011, appellant moved to dismiss the original and superseding indictments and requested a hearing on the motion. However, on April 12, 2011, before any hearing on the matter, appellant's counsel moved to withdraw, citing a breakdown in communication stemming from a disagreement with appellant regarding the trial judge's impartiality over the matter.[1] At appellant's request, counsel also filed an affidavit to disqualify the trial judge, as well as a motion to continue the April 18, 2011 trial. The motion to continue stated that "[appellant] has executed a general time waiver. Thus, time is not of the essence." On April 15, 2011, the trial court granted appellant's motion for a continuance, but did not immediately set a new trial date.

{¶ 11} On April 21, 2011, the trial court filed an entry staying the case, pending the Ohio Supreme Court's resolution of appellant's affidavit to disqualify the trial judge. On May 13, 2011, the Court denied appellant's affidavit of disqualification. Thus, the trial court resumed the case and held a scheduling hearing on May 25, 2011, at which time appellant's counsel agreed to reschedule the trial for August 22, 2011.

---

1. The trial court did not grant counsel's motion to withdraw until September 20, 2011.

{¶ 12} On July 21, 2011, in apparent recognition that the court had yet to rule on appellant's motion to dismiss the indictments, the court filed an "Order Setting Hearing," stating that the parties had agreed to hold a hearing on appellant's motion on August 12, 2011. However, on August 2, 2011, appellant requested that, due to the state's unavailability on August 12, 2011, the court utilize the August 22, 2011 trial date as the hearing on appellant's motion to dismiss. Appellant also requested that the court continue trial until his motion to dismiss was resolved.

{¶ 13} On August 12, 2011, the trial court granted appellant's request, but scheduled the hearing on appellant's motion to dismiss for August 25, 2011, rather than August 22, 2011. After the hearing, the trial court overruled appellant's motion to dismiss, and the case proceeded to trial on August 29, 2011.

{¶ 14} Following trial, appellant was convicted of all charges and was sentenced to an aggregate prison term of 21 years. Appellant timely appeals, raising two assignments of error for review.

{¶ 15} Assignment of Error No. 1:

{¶ 16} THE DEFENDANT'S STATUTORY AND CONSTITUTIONAL SPEEDY TRIAL RIGHTS HAVE BEEN VIOLATED TO HIS PREJUDICE.

{¶ 17} In his first assignment of error, appellant maintains that the charges against him should have been dismissed because his rights to a speedy trial were violated.

{¶ 18} Ohio recognizes both a constitutional and a statutory right to a speedy trial. Section 10, Article I of the Ohio Constitution; Sixth and Fourteenth Amendments to the United States Constitution. Ohio enacted R.C. 2945.71 to 2945.73 to provide specific time requirements for the state to bring a defendant to trial. *State v. Baker*, 78 Ohio St.3d 108, 110 (1997). Courts must strictly construe these statutes against the state. *State v. Nelson*, 12th Dist. No. CA2007-11-046, 2009-Ohio-555, ¶ 4, citing *Brecksville v. Cook*, 75 Ohio St.3d

53, 57 (1996).

{¶ 19} According to R.C. 2945.71(C)(2), a person against whom a felony charge is pending must be brought to trial within 270 days from the date of his arrest, not including the actual date of his arrest. R.C. 2945.71(E) provides that when a defendant is held in jail in lieu of bail on the pending charge, each day shall be counted as three days. Applying this statute in the juvenile bindover context, the Ohio Supreme Court has held that "[t]he time for speedy trial commences to run the day after a juvenile court relinquishes jurisdiction." *State v. Bickerstaff*, 10 Ohio St.3d 62, 67 (1984), citing *State ex rel. Williams v. Court of Common Pleas*, 42 Ohio St.2d 433 (1975) ("the 90-days period established by R.C. 2945.71[C][2] * * * for commencing trial does not begin to run until the Juvenile Court relinquishes jurisdiction and transfers the accused to the 'adult' court"). *See also State v. Harvey*, 3rd Dist. No. 1-09-48, 2010-Ohio-1627, ¶ 23; *State v. Banks*, 8th Dist. No. 89677, 2008-Ohio-1717, ¶ 12.

{¶ 20} Here, the juvenile court relinquished jurisdiction over appellant and transferred him to the general division of the common pleas court by judgment entry on November 17, 2010. *See State v. Steele*, 8 Ohio App.3d 137 (10th Dist.1982), paragraph two of the syllabus ("[f]or purposes of R.C. 2945.71, the relinquishment of jurisdiction does not occur until an order is filed for journalization in the juvenile court determining to transfer the defendant to the 'adult' court"). Thus, appellant's speedy-trial clock began to run on November 18, 2010.

{¶ 21} Appellant, however, contends that the rule established in *Williams* is obsolete and should not apply to him because his bindover was mandatory pursuant to R.C. 2152.12. Appellant argues that the speedy-trial clock should have instead started on October 18, 2010, when the state filed its notice of intent to seek appellant's transfer to the common pleas court for prosecution as an adult. Appellant believes that a notice of intent requesting a mandatory transfer is essentially a "charging instrument," which precludes judicial discretion

and, in effect, automatically requires that juveniles be "treated as adults no exceptions." [sic] We disagree.

{¶ 22} Thus far, a juvenile's speedy-trial right is purely a creature of statute, and the statutes do not make the notice of intent the starting point for the speedy-trial clock. We decline to add words to the statute or interpret legislative silence as authorization to commence the speedy-trial clock for mandatory juvenile transfers at the notice of intent, particularly when the *Williams* court has clearly spoken on the matter, and it is our duty to abide by that interpretation. *See Harvey*, 2010-Ohio-1627 ("[t]he Ohio Supreme Court has held that the speedy trial time does not begin to run until the juvenile court relinquishes jurisdiction and we are bound to follow the law and decisions of the Ohio Supreme Court"). *See also State v. Taylor*, 2nd Dist. No. 14456, 1995 WL 680052, * 10 (Nov. 17, 1995).

{¶ 23} Moreover, we do not agree with appellant that the notice of intent is tantamount to a "charging instrument" sufficient to trigger R.C. 2945.71. *See Kent v. United States*, 383 U.S. 541, 86 S.Ct. 1045 (1966). Instead, it is simply an initiation of the process to determine whether a delinquent child is subject to mandatory transfer. R.C. 2152.10(A). Transfer is not mandatory, and the juvenile court is not required to relinquish jurisdiction, unless and until the court finds that the case meets the conditions enumerated in R.C. 2152.10 and 2152.12, including a finding that there is probable cause to believe that the child committed the act or acts charged. R.C. 2152.12(A)(1)(b). *See In re D.T.F.*, 10th Dist. Nos. 05AP-03, 05AP-04, 2005-Ohio-5245, ¶ 12 ("[t]o grant either a mandatory or discretionary transfer, a juvenile court must find that probable cause exists to believe that the child committed the acts charged"); *State v. Hicks*, 8th Dist. No. 83981, 2005-Ohio-1842, ¶ 13 ("a juvenile bindover proceeding is not adjudicatory in nature"); *Smith v. Bradshaw*, 5th Dist. No. 05-CA-66, 2005-Ohio-5403, ¶ 14.

{¶ 24} Based upon the foregoing, we reject appellant's contention that the speedy-trial

clock for his case should have begun when the state filed its notice of intent, and we hold that the time to calculate appellant's speedy-trial time began on November 18, 2010, the day after the juvenile court relinquished jurisdiction and transferred the matter to the general division of the court. *See Bickerstaff*, 10 Ohio St.3d at 67.

{¶ 25} Appellant next argues that even "[a]ssuming, *arquendo*, the Clock began to run with the Bind-Over Preliminary Hearing," the trial court misapplied R.C. 2945.71 in calculating speedy-trial time. [sic] Upon review, we reject this argument, as appellant waived speedy-trial time when he signed an open-ended waiver of his speedy-trial rights on February 2, 2011.

{¶ 26} However, appellant claims that his waiver was not knowingly and intelligently made, since he signed it without knowing that the former assistant prosecutor had tampered with his original indictment by adding firearm specifications without a review by the grand jury. Conversely, the state claims that appellant's waiver was valid, and that it also applied to the corrected set of charges subsequently set forth in the superseding indictment. In this regard, the state claims that our case is distinguishable from the rule set forth in *State v. Adams*, 43 Ohio St.3d 67 (1989), wherein the Ohio Supreme Court held that "[w]hen an accused waives the right to a speedy trial as to an initial charge, this waiver is not applicable to additional charges arising from the same set of circumstances that are brought subsequent to the execution of the waiver." *Id.* at syllabus. We agree with the state.

{¶ 27} The defendant in *Adams* was initially charged with a violation of R.C. 4511.19(A)(3) for having a specified amount of alcohol concentration on his breath. At that point, Adams signed a speedy-trial waiver. Thereafter, Adams was charged under R.C. 4511.19(A)(1), operating a motor vehicle while under the influence of alcohol, based on the same facts and circumstances. The trial court found that Adams' speedy-trial waiver as to the first charge extended to the second. The court of appeals agreed. However, the

Supreme Court reversed, concluding that Adams' waiver of his right to a speedy trial as to the first charge could not be construed as a knowing and intelligent waiver of such a right as to the second charge, because the charges were distinct and "could involve different defenses at time of trial." *Id.* at 69. The Court explained that the waiver was not knowing and intelligent as to the second charge because Adams did not know "the exact nature of the crime he [was] charged with" when he executed the waiver. *Id.* at 70.

{¶ 28} Our facts are distinguishable from *Adams*. Here, the charges in the original indictment and the superseding indictment were identical. Thus, there is no question that appellant was fully aware of the charges against him, and that the superseding indictment did not require a different defense at trial. Further, the superseding indictment did not expose appellant to a different level of punishment. Thus, any waiver that was executed knowingly, voluntarily, and intelligently as to the original indictment would be equally applicable to the superseding indictment. *See State v. Dobbins*, 9th Dist. No. 08CA009498, 2009-Ohio-2079; *State v. Clark*, 7th Dist. No. 04 MA 246, 2006-Ohio-1155 (waiver of speedy trial rights extended to superseding indictment, where superseding indictment did not change or add offenses); *State v. Sain*, 2nd Dist. No. 13493, 1993 WL 323539, * 5 (a "fitting corollary" to the *Adams* rule "is that where the charges in the second indictment are identical to * * * the initial indictment, then it is not unfair to apply a defendant's waiver of his speedy trial rights in the initial indictment to the subsequent indictment"); *State v. Luff*, 85 Ohio App.3d 785 (6th Dist.1993) (distinguishing *Adams* because both indictments contained the same charges).

{¶ 29} To this end, appellant argues that the time waiver he signed on February 2, 2011 as to the original indictment was not knowingly, voluntarily, and intelligently made, because he signed it without knowing that the former prosecutor had tampered with his indictment. Appellant claims that he never would have signed the waiver if he had known this information.

{¶ 30} We find appellant's argument to be disingenuous, in light of the two additional time waivers found in the record, which were executed well after the state issued the superseding indictment. First, on April 12, 2011, appellant's counsel filed a motion to continue trial, which contained waiver language, stating, "[d]efendant has executed a general time waiver. Thus, time is not of the essence." Then, during a hearing on May 25, 2011, while discussing the superseding indictment, the defense declared, "[t]here is a time waiver on * * *." It is well-established that a time waiver made by counsel for a defendant on the record in open court is a valid waiver. *State v. Riley*, 162 Ohio App.3d 730, 2005-Ohio-4337, ¶ 24 (12th Dist.). Accordingly, we find that appellant's February 2, 2011 waiver, ratified by the April 12, 2011 and May 25, 2011 time waivers, was made knowingly, voluntarily, and intelligently, and that it applied with equal force to the superseding indictment.[2]

{¶ 31} Even if appellant's speedy-trial time waiver was somehow ineffectual, we would find that delays occasioned by appellant tolled the speedy trial limits of R.C. 2945.71, so that appellant was tried within the requisite amount of time.

{¶ 32} As discussed earlier, appellant's speedy-trial time clock began to run the day after the juvenile court relinquished jurisdiction and transferred the matter to adult court, or on November 18, 2010. *Bickerstaff*, 10 Ohio St.3d at 67. Because appellant was held in jail in lieu of bail from that point onward, the triple-count provision of R.C. 2945.71(E) applied, and the state was required to bring appellant to trial by February 16, 2011, 90 days from the start date. However, appellant's trial was held on August 29, 2011. Once the defendant shows that the applicable speedy-trial time has expired, he or she has established a prima facie case for discharge. *State v. Baker*, 12th Dist. No. CA2008-03-008, 2009-Ohio-674, ¶ 12. As

---

2. In his brief, appellant notes that the February 2, 2011 waiver was not journalized until March 11, 2011, and states that "[a] court of record speaks only through its journal." However, appellant did not take issue with this fact below, thus, we need not address it on appeal. *See State v. Hancock*, 12th Dist. Nos. CA2001-12-115, CA2001-12-116, CA2002-01-004, 2003-Ohio-1616, ¶ 21 ("[a] party has waived the right to contest an issue on appeal if that issue was not raised at the appropriate time in the trial court").

such, the burden shifted to the state to show that the time limit was extended under R.C. 2945.72, which states, in pertinent part,

> The time within which an accused must be brought to trial, or, in the case of felony, to preliminary hearing and trial, may be extended only by the following:
>
> * * *
>
> (E) Any period of delay necessitated by reason of a plea in bar or abatement, motion, proceeding, or action made or instituted by the accused;
>
> * * *
>
> (H) The period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion * * *.

*See State v. Butcher*, 27 Ohio St.3d 28, 30-31 (1986).

{¶ 33} The relevant speedy-trial time is as follows. From November 18, 2010 until January 11, 2011, no events occurred that tolled the running of the speedy-trial clock. Thus, 54 days of actual time passed, which would count as 165 days using the triple-count calculation. R.C. 2945.71(C)(2) and (E). On January 11, 2011, appellant filed motions for discovery and a bill of particulars, which tolled the speedy-trial clock until the state complied with appellant's requests on January 24, 2011. *State v. Brown*, 98 Ohio St.3d 121, 2002-Ohio-7040, ¶ 21-23 (requests for discovery and bills of particulars are tolling events under R.C. 2945.72[E]).

{¶ 34} However, appellant argues that his motions for discovery and a bill of particulars were not tolling events, because they did not cause the trial date to be extended. However, the Ohio Supreme Court has held that the state need not prove that a defendant's motion causes a delay in order for speedy-trial time to be tolled pursuant to R.C. 2946.72(E), stating, "[i]t is the filing of the motion itself, the timing of which the defense can control, that provides the state with an extension." *State v. Sanchez*, 110 Ohio St.3d 274, 2006-Ohio-

4478, ¶ 26. The Court explained, "R.C. 2945.72(E) implicitly recognizes that when a motion is filed by a defendant, there is a 'period of delay necessitated' – at the very least, for a reasonable time until the motion is responded to and ruled upon." *Id. See also State v. Rouse*, 5th Dist. No. 2007 AP 12 0078, 2008-Ohio-5891, ¶ 21-22. Thus, appellant's demand for discovery and a bill of particulars tolled the speedy-trial time until the state complied with the request 13 days later, a reasonable time period within which to respond. *See State v. Barnett*, 12th Dist. No. CA2002-06-011, 2003-Ohio-2014.

{¶ 35} Then, on January 27, 2011, 57 days into appellant's 90 days, appellant moved for a continuance, so that defense counsel could complete discovery and prepare for trial. The trial court granted appellant's motion on February 2, 2011, and set a new trial date for April 18, 2011. Based on the general theory that a defendant's request for a continuance tolls the speedy-trial time, we would typically find that appellant's motion tolled the time between the date of filing the motion and the new trial date of April 18, 2011. R.C. 2945.72(H); *State v. King*, 70 Ohio St.3d 158, 162 (1994). However, as we noted above, on March 30, 2011, the state filed a superseding indictment containing the same five charges as the original indictment.[3] The state consents to being charged with five days between March 30, 2011 and April 4, 2011, when appellant filed his motion to dismiss the indictments. *But see State v. Blackburn*, 118 Ohio St.3d 163, 2008-Ohio-1823, ¶ 23 ("periods of delay resulting from motions filed by the defendant in a previous case also apply in a subsequent case in which there are different charges based on the same underlying facts and circumstances of the previous case"). Thus, relying strictly on the state's word, only 62 speedy-trial days had passed as of appellant's motion to dismiss, at which time the clock was

---

3. There is no dispute that the superseding indictment was subject to the same speedy-trial limitations as the original charges, as the superseding indictment was based on the same facts and circumstances. *See State v. Baker*, 78 Ohio St.3d at 110 ("subsequent charges made against an accused would be subject to the same speedy-trial constraints as the original charges, if additional charges arose from the same facts as the first indictment").

tolled until the trial court denied appellant's motion on August 26, 2011. By the time appellant's trial occurred on August 29, 2011, 65 days had elapsed, which was well within appellant's speedy-trial time period. Thus, we find that appellant's statutory right to a speedy trial was not violated.[4]

{¶ 36} We next address appellant's contention that the state violated his constitutional right to a speedy trial.

{¶ 37} When determining whether an accused was denied the right to a speedy trial as guaranteed by the Sixth Amendment, the court must consider four factors: (1) length of delay, (2) reason for the delay, (3) the accused's assertion of his right, and (4) prejudice to the accused. *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182 (1972); *State v. Davis*, 46 Ohio St.2d 444, 446 (1976). No one factor is controlling. Rather, the court must balance these factors under a totality of the circumstances framework. *Barker* at 533.

{¶ 38} The first of the *Barker* factors, the length of delay, "is to some extent a triggering mechanism." *Id.* at 530. "Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Id.* If the defendant makes the initial threshold showing of presumptive prejudice, we must then consider the length of the delay with the other *Barker* factors. *Doggett v. United States*, 505 U.S. 647, 652, 112 S.Ct. 2686 (1992), citing *Barker* at 553-534.

{¶ 39} Initially, we note that the Ohio Supreme Court has not addressed whether these factors apply to those proceedings that occur in the juvenile court. We do not purport to decide this issue now. However, even giving appellant the benefit of the doubt, we are not

---

4. In addition to the above tolling events, the record includes other delays occasioned by appellant, including, but not limited to: (1) a motion to unseal grand jury proceedings filed March 1, 2011 and denied on March 24, 2011; (2) a motion for an expert witness filed April 20, 2011; (3) a motion to continue filed April 12, 2011 and continued by mutual agreement of the parties until August 22, 2011; (4) the pendency of appellant's affidavit of disqualification between April 12, 2011 and May 13, 2011; (5) a motion supplementing defense counsel's motion to withdraw filed May 10, 2011; and (6) a motion to continue filed August 2, 2011.

persuaded that the 11-month delay between appellant's arrest as a juvenile and his conviction was sufficient to trigger a constitutional analysis. *See Williams*, 42 Ohio St.3d at fn. 4. *See also State v. Schraishuhn*, 5th Dist. No. 2010-CA-00135, 2011-Ohio-3805, ¶ 29-31 (discussing the applicability of constitutional speedy-trial rights to preindictment delays). Delays begin to become presumptively prejudicial as they approach the one-year mark. *Doggett*, 505 U.S. at fn. 1. This, however, is not a hard and fast rule, and it depends on the particular circumstances of the case. We have previously stated that "[w]here trial has been commenced approximately one year after arrest, the delay has been held to be not presumptively prejudicial." *State v. Terry*, 12th Dist. No. CA2001-07-012, 2002-Ohio-4378, ¶ 35. *See also State v. Taylor*, 98 Ohio St.3d 27, 2002-Ohio-7017 (one-year delay was not presumptively prejudicial); *State v. Hilyard*, 4th Dist. No. 05CA598, 2005-Ohio-4957 (11-month delay not presumptively prejudicial); *State v. Sellers*, 10th Dist. No. 08AP-810, 2009-Ohio-2231 (11-month delay not presumptively prejudicial). In this case, we see no reason to believe that the 11-month delay was presumptively prejudicial, therefore we need not consider the other *Barker* factors.

**{¶ 40}** However, even if we assume, arguendo, that the delay in appellant's case was presumptively prejudicial, we do not find that the other *Barker* factors weigh in appellant's favor. Appellant did meet the third factor, a timely assertion of his rights, as evidenced by his motion to dismiss. However, the other factors militate against him.

**{¶ 41}** First, the delay in this case was not inordinately long, given that appellant's own motions necessitated the majority of the delay. Secondly, appellant was unable to establish any prejudice resulting from the delay. As mentioned earlier, appellant waived his right to a speedy trial on three separate occasions. *See Terry*, 2002-Ohio-4378 at ¶ 35 ("[w]here a defendant signs a waiver of speedy trial rights * * * defendant's statutory and constitutional rights to a speedy trial are not violated so long as he is tried within a reasonable time").

However, appellant claims that there were other examples of prejudice, including the state's failure to timely comply with his discovery request. As we discussed above, the state only took 13 days to furnish discovery materials, which was, in all respects, a reasonable response time. *See Barnett*, 2003-Ohio-2014 (six-month delay in the state's response to defendant's discovery request was a reasonable tolling period). Appellant also states that "other issues" arose that caused his attorney to be unprepared for trial, including "delays in bring him promptly to arraignment." [sic] However, appellant does not explain how the alleged delay caused such a lack of preparedness

{¶ 42} In sum, we find that the delay in appellant's trial was reasonable with no resulting prejudice, and therefore appellant was not deprived of his constitutional right to a speedy trial.

{¶ 43} As a final matter, appellant claims that the trial court erred in failing to consider the "*Barko v. Wingo*" factors during the hearing on appellant's motion to dismiss. [sic] Presumably, appellant means that the trial court did not consider the *Barker v. Wingo* factors. While the trial court did not specifically cite all four *Barker* factors during the hearing, it did find that appellant did not suffer prejudice as a result of the delay, and, as discussed above, the record supports the trial court's finding.

{¶ 44} Having considered and rejected each of appellant's arguments, appellant's first assignment of error is overruled.

{¶ 45} Assignment of Error No. 2:

{¶ 46} TRIAL COUNSEL'S FAILURE TO FILE A MOTION TO SUPPRESS AND/OR NOTICE OF ALIBI AND/OR *BRADY* MOTION WAS INEFFECTIVE REPRESENTATION ALTERNATIVELY THE COURT HEARING THE MOTION TO DISMISS SHOULD HAVE ENGAGED IN FURTHER INQUIRY TO DETERMINE IF A BRADY VIOLATION OCCURRED IN THIS INSTANCE[.]

{¶ 47} In his second assignment of error, appellant argues that he received ineffective assistance of trial counsel.

{¶ 48} To demonstrate ineffective assistance of counsel, a two-prong test is employed. First, a defendant must establish that counsel's representation fell below an objective standard of reasonableness, and second, that the defendant was prejudiced as a result of counsel's deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 141-142 (1989). While the appropriate test has two prongs, "there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland* at 697.

{¶ 49} Under the first prong, reversal "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *State v. Thomas*, 12th Dist. No. CA2010-10-099, 2012-Ohio-2430, ¶ 46, quoting *Strickland*, 466 U.S. at 687. *See also State v. Hand*, 107 Ohio St.3d 378, 2006-Ohio-18, ¶ 199. There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance * * *." *Strickland* at 689. There is also a presumption that the challenged action may be "sound trial strategy" that the defendant must overcome. *Thomas* at ¶ 46. Under the second prong, the defendant has the burden to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*, quoting *Strickland* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

{¶ 50} Appellant first contends that his trial counsel was ineffective for failing to file a notice of alibi. However, counsel did file a notice of alibi on April 8, 2011, which stated that "on October 3, 2010, at all relevant times * * * [appellant] was located at, or in en route to or from, either the Zettler Funeral Home and Cremation Service property * * * or the Burger King

- 15 -

Restaurant * * *." Thus, the record does not support appellant's first claim. *See State v. Jackson*, 107 Ohio St.3d 53, 2005-Ohio-5981, ¶ 134.

{¶ 51} Appellant next argues that trial counsel was deficient for failing to file a motion to suppress evidence elicited during trial.

{¶ 52} "Counsel is not *per se* ineffective for failing to file a suppression motion." *State v. Tibbetts*, 92 Ohio St.3d 146, 166 (2001). One who asserts a claim of ineffective assistance on the basis of trial counsel's failure to file a motion to suppress must show that the failure to file the motion caused him prejudice. *State v. Hamilton*, 12th Dist. No. CA2001-04-044, 2002 WL 205489, * 3 (Feb. 11, 2002). Moreover, where the failure to file a motion to suppress represents a reasonable trial strategy or a "tactical judgment," a claim of ineffective assistance must fail. *State v. Rodriguez*, 12th Dist. No. CA2009-09-024, 2010-Ohio-1944, ¶ 43, quoting *State v. Adams*, 103 Ohio St.3d 508, 2004-Ohio-5845, ¶ 31-33.

{¶ 53} Appellant first claims that his trial counsel should have filed a motion to suppress his written statement to the police. Appellant contends that the statement was either coerced or forged, as evidenced by "suspicious" initials on the second page of the statement, which appellant claims are not his own. First, the record shows that trial counsel's decision not to file a motion to suppress appellant's written statement was a matter of trial strategy, where the statement contained exculpatory evidence that counsel may have wanted to present to the jury, namely, appellant's alibi. Moreover, we do not see any evidence of prejudice, where there is no indication that appellant's written statement was critical to his conviction, or that it would have been suppressed had a motion been filed. *See State v. Layne*, 12th Dist. No. CA2010-09-073, 2011-Ohio-3763, ¶ 46 ("[e]ven if the record contains some support for a motion to suppress, we presume that trial counsel was effective if counsel could reasonably have decided that the filing of a motion to suppress would have been a futile act").

{¶ 54} Appellant next argues that his trial counsel was ineffective for failing to seek suppression of various witnesses' identification of appellant through a single photograph. Appellant claims that "[i]dentification was through a single photograph but without a motion how do we know the impact on memory or whether witness was thinking of someone else[?]" [sic] It is unclear whether appellant is arguing that his in-court or out-of-court identification, or both, ought to have been subject to a motion to suppress. This lack of development in the argument makes it impossible to say that counsel's failure to move to suppress the identification evidence was ineffective representation. *See State v. Spencer*, 10th Dist. No. 03AP-579, 2004-Ohio-4102, ¶ 24.

{¶ 55} Appellant also claims that his trial counsel was deficient for failing to move to suppress evidence obtained from appellant's cell phone. While it is not entirely clear, appellant appears to argue that the police conducted an invalid warrantless search on his phone. Even debatable trial strategies and tactics do not constitute ineffective assistance of counsel. *State v. Gleckler*, 12th Dist. No. CA2009-03-021, 2010-Ohio-496, ¶ 10. However, even assuming, arguendo, that appellant's trial counsel should have filed a motion to suppress appellant's phone records, we find that appellant cannot meet the prejudice prong of *Strickland*. That is, there is no reasonable probability that counsel's alleged error affected the jury's finding of appellant's guilt beyond a reasonable doubt. *See Strickland*, 466 U.S. at 695. Even without the phone records, the evidence against appellant was compelling. Trial counsel was therefore not ineffective for failing to file a motion to suppress.

{¶ 56} Appellant next contends that his trial attorney was ineffective for failing to call an expert witness to testify on the reliability of eyewitness identifications. However, "counsel's decision whether to call a witness falls within the rubric of trial strategy and will not be second-guessed by a reviewing court." *State v. Hanna*, 95 Ohio St.3d 285, 2002-Ohio-2221, ¶ 118, quoting *State v. Treesh*, 90 Ohio St.3d 460, 490 (2001). Further, "a claim for

ineffective assistance of counsel cannot be premised upon speculative claims about what additional evidence may have been disclosed." *State v. Erich*, 11th Dist. No. 2011-L-146, 2012-Ohio-4006, ¶ 30.

{¶ 57} Appellant's argument presupposes that testimony from an expert witness would have directly undermined the state's witnesses' abilities to identify appellant as the perpetrator. However, in many criminal cases, trial counsel's decision not to call an expert witness is "unquestionably tactical because such an expert might uncover evidence that further inculpates the defendant." *State v. Glover*, 12th Dist. No. CA2001-12-102, 2002-Ohio-6392, ¶ 25. Here, counsel's decision not to call an expert on eyewitness identification was not flawed or deficient, as appellant has failed to specify what the expert would have said, or how the expert's testimony would have aided his defense. *See State v. Witherspoon*, 8th Dist. No. 94475, 2011-Ohio-704, ¶ 40-41. Additionally, appellant did not show that the result of the proceeding would have been different, had an expert witness been called to testify. *See State v. Hayes*, 8th Dist. No. 93785, 2010-Ohio-5234, ¶ 32; *Strickland*, 466 U.S. at 694.

{¶ 58} Appellant also argues that counsel was ineffective for requesting an unnecessary continuance in the trial. Specifically, appellant points to counsel's motion filed August 2, 2011, which requested that the court continue trial and utilize the scheduled trial date for a hearing on appellant's motion to dismiss. First, we must defer to trial counsel's idea that a continuance was necessary. Further, appellant cannot establish that he suffered prejudice as a result of counsel's motion, where, even if we were to charge the state with the 17-day delay that appellant asserts, he was still brought to trial within the time required by law.

{¶ 59} Appellant next contends that trial counsel was ineffective in failing to pursue a claim that the former assistant prosecutor committed a *Brady* violation. *See Brady v.*

*Maryland*, 373 U.S. 83, 83 S.Ct. 1194 (1963). Specifically, appellant believes that counsel should have explored whether the former prosecutor tainted other aspects of his case, aside from the original indictment.

{¶ 60} Appellant's claim that the former prosecutor tainted additional aspects of his case is purely speculative, and is not supported by the record. Upon learning about the assistant prosecutor's misconduct, the trial court appointed a special prosecutor to the case, which removed any claim that the state was withholding evidence favorable to the defense simply because the previously assigned prosecutor had done so. Thus, appellant cannot show that, but for trial counsel's failure to pursue a *Brady* claim, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694.

{¶ 61} Because appellant has failed to satisfy one or both prongs of *Strickland* in each instance, we reject appellant's claim that he was denied effective assistance of counsel.

{¶ 62} On a different note, appellant argues that the case must be reversed as a result of "judicial indifference," where the trial court "refused" to consider evidence of *Brady* violations offered by the defense during the hearing on appellant's motion to dismiss.

{¶ 63} Initially, we find it curious that in his previous argument, appellant claimed that trial counsel was ineffective for failing to pursue a *Brady* claim, and yet here, he claims that counsel presented ample evidence of *Brady* violations that the trial court failed to consider. In any event, we find that this argument lacks merit, where the trial court clearly indicated that it had analyzed the *Brady* evidence offered by the defense, and ruled that the former assistant prosecutor's activities in other cases did not result in prejudice to appellant. *See Strickler v. Greene*, 527 U.S. 263, 281-282, 119 S.Ct. 1936 (1999) (a successful *Brady* claim requires a showing of prejudice).

{¶ 64} Appellant's second assignment of error is overruled.

{¶ 65} Judgment affirmed.

S. POWELL and M. POWELL, JJ., concur.